Donald L. WELCH, Plaintiff,

v.

KENNEDY PIGGLY WIGGLY
STORES, INC., Defendant.

Donald L. WELCH, Plaintiff,

v.

KENNEDY PIGGLY WIGGLY STORES,
INC., National Security Assn., Inc., and
Herman L. Mullins, t/a National Secur-
ity Assn., Inc., Defendants.

Civ. A. Nos. 84–0163–B, 85–0195–B.

United States District Court,
W.D. Virginia,
Big Stone Gap Division.

Aug. 5, 1986.

S. Strother Smith, III, Abingdon, Va., for plaintiff.

David Nagle, Richmond, Va., for National Security.

John E. Kieffer, Bristol, Va., for Kennedy Piggly Wiggly.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

The consolidated civil actions, 84–0163–B and 84–0195–B, are now before this court on each of the defendants' motions to dismiss and defendant Herman Mullins' motion for sanctions. Plaintiff, Donald Welch, instituted these actions in bankruptcy court after filing a petition for bankruptcy in the United States Bankruptcy Court for the Western District of Virginia. Because the bankruptcy court was without jurisdiction over the matters, which involve only state law causes of action, the cases were transferred to this court's docket. This court's jurisdiction is contended under 28 U.S.C. § 1334.

### I.

### BACKGROUND

Plaintiff filed his first complaint in bankruptcy court on September 20, 1983 against defendants Herman Mullins (Mullins), t/a National Security Association, Kennedy Piggly Wiggly Stores, Inc. (Piggly Wiggly), Bruce Hayes (Hayes) and Delmer Province (Province). As alleged, plaintiff was employed by Piggly Wiggly until July 25, 1983. Sometime prior to that date, the Norton, Virginia Piggly Wiggly store where plaintiff was working began to become less profitable so management decided to reduce the store's payroll by releasing certain employees. The plan was for the store to release the employees in such a way that the employees would not be entitled to unemployment compensation, thereby enabling the store to avoid any increase in unemployment compensation taxes. Subsequently, defendants Hayes and Province, as agents of Piggly Wiggly, conspired with defendant Mullins, trading as the National Security Association of Richmond, Virginia, in furtherance of the plan. Piggly Wiggly hired Mullins "to come to Norton supposedly to conduct certain polygraph examinations" of a number of Piggly

Wiggly employees, including the plaintiff. Mullins interviewed plaintiff on July 25, 1983. Following the interview, Mullins "being fully cognizant of what Kennedy Piggly Wiggly was trying to do and being involved in a conspiracy with them to carry out their purpose wrote a report to Kennedy Piggly Wiggly ... and made statements in that report which were totally and completely untrue concerning his investigation of and interview with Donald Welch." Among the false statements made was the allegation that plaintiff admitted to Mullins that he had violated company policy by mishandling coupons and allowing employees under his supervision to mishandle coupons. Mullins also submitted the false statements to the Virginia Employment Commission through his affidavit dated August 10, 1983. "As a result of [those statements] ... [plaintiff] lost his job and any reasonable chance of obtaining benefits before the Virginia Employment Commission." Based on these factual allegations, plaintiff sought damages against each of the defendants on theories of conspiracy, common law and statutory libel and slander, tortious interference with prospective economic advantage, and outrageous conduct.

On September 30, 1983, the bankruptcy court, after determining that it was without jurisdiction over the matter, transferred the matter to this court. After the transfer, this court took the following action. On October 26, 1983, the court granted plaintiff's motion to amend his complaint by changing the name of defendant Mullins to Mullins National Security Association, Inc. (National Security) and by including Herman Mullins individually as a defendant. On December 15, 1983, the court granted plaintiff's motion to dismiss Herman Mullins as a defendant in the case. Upon defendant Piggly Wiggly's Fed.R. Civ.P. 12(b)(6) motion, the court granted on January 9, 1984 the motion to dismiss as to allegations against Piggly Wiggly of common law libel and slander. Plaintiff's mo-

tion to dismiss defendants Hayes and Province was granted on October 9, 1984. On June 17, 1985, the court issued a memorandum opinion and order granting defendant Piggly Wiggly's motion to dismiss as to allegations of conspiracy under VA. CODE § 18.2–499 (1965 added vol.). Finally, on July 17, 1985, the court granted the motion by National Security to dismiss the corporation as a named defendant on the ground that service of process had not been made upon it.

Plaintiff subsequently filed his second complaint in bankruptcy court on July 24, 1985. The defendants originally named in this action were Mullins, National Security, Piggly Wiggly and Murray Guard, Inc. of Virginia (Murray Guard) as successor to National Security. With the exception of deleting the names of Hayes and Province as conspirators with Mullins, plaintiff alleges the same set of facts as were alleged in his first complaint. He also seeks damages based upon the same theories of relief with the addition of claiming interference with an economic opportunity and/or contractual relations and not just interference with prospective economic advantage.

As before, this action was also transferred to this court's docket based on a finding that the bankruptcy court lacked jurisdiction over the subject matter. The court's only disposition since the action was transferred has been to grant a motion consented to by all parties to dismiss Murray Guard as a named defendant.

Thus, the only remaining defendant from plaintiff's action filed on September 20, 1983 is Piggly Wiggly, and the defendants remaining in his action filed on July 24, 1985 are Piggly Wiggly, Mullins and National Security. Because the allegations in the complaints filed in the two actions are virtually identical and the remaining defendant in the first action is named in the second, the court will consolidate these actions and treat the second complaint as an amendment to the first.[1] Having so consol-

---

1. Were these actions not treated as one, the court's rulings on the claims against Piggly Wig-

gly in the original action would nevertheless be

idated the actions, the court will now address defendants' motions to dismiss and defendant Mullins' motion for sanctions.

## II.

### DEFENDANTS' MOTIONS TO DISMISS

#### A. Jurisdiction

The court will first briefly address as a preliminary consideration the issue of jurisdiction. Each of the defendants has moved to dismiss this action based on the contention that the court is without subject matter jurisdiction over state law claims that come to the court only because they were raised in a complaint by the plaintiff as a petitioner in bankruptcy, with no other independent basis of jurisdiction attaching, i.e. diversity of citizenship. Defendants Mullins and National Security argue that, in conferring such jurisdiction on the federal district courts, Title 28 U.S.C. § 1334 (as amended July 10, 1984)[2], which Congress revised in response to the *Northern Pipeline Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), exceeds the proper scope of subject matter jurisdiction permissible under Article III, § 2 of the United States Constitution.

In making their argument, these defendants failed to recognize that the plurality in *Marathon*, citing *Williams v. Austrian*, 331 U.S. 642, 67 S.Ct. 1443, 91 L.Ed. 1718 (1947) and *Schumacher v. Beeler*, 293 U.S. 367, 55 S.Ct. 230, 79 L.Ed. 433 (1934), reaffirmed the principle that a case such as the one at bar may be adjudicated in federal court (but not bankruptcy court) because of its relationship to the petition in bankruptcy. *Marathon*, 458 U.S. at 72 n. 26, 102 S.Ct. at 2872 n. 26. The cases involving this issue have thus been decided on whether the action in question is "related"

to the pending bankruptcy case. One commentator explains as follows:

> As another court put it, related proceedings are 'those civil proceedings that, in the absence of bankruptcy, could have been brought in a district court or state court.'

> \* \* \* \* \* \*

> These definitional cases adopt a rationale which looks to whether the proceeding in question could have been brought absent a case under the Code. It has been proposed above as a working hypothesis that the only proceedings which fit this formulation are suits owned by the debtor when the [bankruptcy] case was filed—causes of action based upon facts then in existence—and suits between third parties. It should not be surprising, then, that the following matters have been held to be 'related': an action by a debtor alleging breach of a prepetition contract; an action to collect a prepetition account; an action seeking an injunction prohibiting violation of a covenant not to compete; an action by a debtor alleging breach of warranty; and an action by a debtor alleging tortious interference with a contractual relationship, breach of contract, and like matters. Such a formulation is not only in accordance with the cases, but seems to comport with notions of the constitutional mandate set out in *Marathon*.

1 COLLIER ON BANKRUPTCY ¶ 3.01[1][c][v] (15th ed. 1986) (footnotes omitted). Based on this authority, the court concludes that the present case bears such a relationship to plaintiff's bankruptcy proceedings so as to give this court jurisdiction over plaintiff's state law claims against the defendants.

#### B. Claims Against Piggly Wiggly

As to Piggly Wiggly, the claims remaining against it are for statutory libel

---

*res judicata* as to the same claims raised in the second action.

2. Title 28 U.S.C. § 1334 provides in pertinent part under subsection (b) as follows:

> Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or

courts other than district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or relating to cases under title 11.

and slander under VA. CODE § 8.01–45 (1984 repl. vol.), tortious interference with economic opportunity and/or contractual relations and outrageous conduct. For the same reason that the court dismissed the claim against Piggly Wiggly for common law libel and slander—that the complaint fails to allege that Piggly Wiggly uttered any statements to or about the plaintiff— the court now concludes that the statutory libel and slander claim against Piggly Wiggly must also be dismissed. The court, however, will not dismiss the other two claims against Piggly Wiggly. Though somewhat novel in kind and context in Virginia, particularly the claim for tortious interference, the court finds that the two remaining claims do state individual causes of action under Virginia law.

Plaintiff claims that Piggly Wiggly tortiously interfered with his economic opportunity and/or contractual relations when Piggly Wiggly, as a result of its scheme with Mullins, fired him from his job and denied him the opportunity to obtain unemployment benefits from the Virginia Employment Commission. Tortious interference with economic opportunity or interference with prospective economic advantage, as it is also called, is actually a separate tort from the tort of interference with contractual relations. But typical of torts so similar in nature and origin, their distinction depends much upon a particular characterization. In Virginia, only the tort of interference with contractual relations has yet been recognized, but the Virginia Supreme Court has included within such a cause of action interference with a "prospective" contractual relationship or a business "expectancy." *Allen Realty Corp. v. Holbert,* 227 Va. 441, 318 S.E.2d 592, 597 (1984); *Chaves v. Johnson,* 230 Va. 112, 335 S.E.2d 97, 102 (1985). In *Chaves,* for example, the court stated:

> The elements required for a prima facie showing of the tort are: (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach

or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

*Id.*

Professor Prosser, on the other hand, in his treatment of the subject, characterizes interference with future contractual relations under the heading of tortious interference with prospective advantage. W. Prosser, HANDBOOK OF THE LAW OF TORTS § 130 (4th ed. 1971). Prosser explains the development of this tort and its reach beyond the context of existing contractual relations as follows:

> Tort liability for interference with prospective advantage seems to have developed at a very early date in cases having to do with the use of physical violence, or threats of it, to drive away customers from the plaintiff's market, or those who might make donations to his church.... There was even a case in England in 1844 in which an actor was allowed to recover against a defendant who had succeeded in having him hissed off of the stage, as a result of which he was unable to obtain further employment.
> The real source of the modern law, however, may be said to be the case of Tempterton v. Russell, in which the Court of Queen's Bench declared that the principles of liability for interference with contract extended beyond existing contractual relations, and that a similar action would lie for interference with relations which were merely prospective or potential.
> Upon this foundation, a rather formidable body of law has been erected, which in general has followed along the lines of interference with contract. It has been said that 'in a civilized community which recognizes the right of private property among its institutions, the notion is intolerable that a man should be protected by the law in the enjoyment of property once it is acquired, but left unprotected by the law in his effort to acquire it;' and that since a large part of what is most valuable in modern life depends upon

'probable expectancies,' as social and industrial life becomes more complex the courts must do more to discover, define and protect them from undue interference.

*Id.* (footnotes omitted). As to the elements of a cause of action for this tort, Prosser proceeds to explain that the action parallels tortious interference with existing contracts. Consequently, the cases turn "almost entirely upon the defendant's motive or purpose [where there has been intent to interfere], and the means by which he has sought to accomplish it. As in the cases of interference with contract, any manner of intentional invasion of the plaintiff's interests may be sufficient if the purpose is not a privileged one." *Id.*

Finally, in a comment to the RESTATEMENT (SECOND) OF TORTS § 766B (1979),[3] a section entitled "Intentional Interference with Prospective Contractual Relation," it is explained that:

The expression, prospective contractual relation, is not used in this Section in a strict, technical sense. It is not necessary that the prospective relation be expected to be reduced to a formal, binding contract. It may include prospective quasi-contractual or other restitutionary rights or even the voluntary conferring of commercial benefits in recognition of a moral obligation.

■ With respect to plaintiff's claim of tortious interference of one kind or another against Piggly Wiggly as a result of his being fired, plaintiff fails to state a cause of action. As his employer, Piggly Wiggly by definition could not have tortiously interfered with the employment relationship between itself and plaintiff; the act must be committed by an intervening party to the subject relationship between others. *See Chaves,* 335 S.E.2d at 102;

*Stauffer v. Fredericksburg Ramada, Inc.,* 411 F.Supp. 1136 (E.D.Va.1976). An appropriate action in tort by an employee against his employer arising over a firing would be an action for wrongful discharge, but such an action is not available to plaintiff here, nor has he made such a claim, since it has been conceded that plaintiff was an at-will employee. *See Hoffman Specialty Co. v. Pelouze,* 158 Va. 586, 164 S.E. 397, 399 (1932) (under employment-at-will doctrine, at-will-employment relationship may be terminated at any time by either party).

■ In view of the authority above, however, the court finds that plaintiff does state a cause of action by his claim that Piggly Wiggly tortiously interfered in his economic opportunity and/or contractual relations when Piggly Wiggly, as a result of its scheme with Mullins, prevented him from obtaining unemployment benefits. Contrary to Piggly Wiggly's contention by counsel at oral argument that *Chaves* precludes plaintiff from such a cause of action since he was an at-will employee, this portion of his claim goes beyond his employment relationship with Piggly Wiggly. Here, plaintiff seeks damages against Piggly Wiggly not for the act of firing but for Piggly Wiggly's alleged intentional interference by way of Mullins' false statements, with his right to pursue the unemployment benefits after his employment with Piggly Wiggly was terminated. The court recognizes that the action arises in a somewhat novel context, seemingly falling somewhere within the spectrum between a straight forward claim for interference with an existing contract and one for interference with economic opportunity where no contract exists. It does appear to the court, however, that plaintiff can be viewed as a third-party beneficiary to the unemployment compensation benefits adminis-

---

**3.** Section 766B of the RESTATEMENT (SECOND) OF TORTS provides:

One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of

(a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or

(b) preventing the other from acquiring or continuing the prospective relation.

tered by the Virginia Employment Commission of which he allegedly had a reasonable opportunity to collect but for the tortious acts committed by Piggly Wiggly through its agent, Mullins. But if the action cannot be characterized as one for interference with a contractual relationship, it certainly represents a legitimate claim of interference with an economic opportunity. Given the Virginia Supreme Court's recognition of a cause of action for interference with a "business expectancy," as well as a contractual relationship, this court is of the opinion that a state court in Virginia would find that plaintiff's "probable expectancy" in unemployment benefits is the kind of expectancy that would be protected against unjustified interference by a third party. *Cf. Rosenberg & Sons v. Craft*, 182 Va. 512, 29 S.E.2d 375, 380 (1944) ("a creditor has a right to use all reasonable means to collect any just obligation due him, but he has no right to unduly interfere with the relation existing between an employer and the employee who may owe the debt").

The court now turns to plaintiff's claim of outrageous conduct. Under Virginia law, such a claim is subsumed within a cause of action for intentional infliction of emotional distress, which the Virginia Supreme Court has recognized as an exception to the state's general rule that damages for emotional distress are not recoverable "unless they result directly from tortiously caused physical injury." *Naccash v. Burger*, 223 Va. 406, 290 S.E.2d 825, 830 (1982). In bringing an action for emotional distress unaccompanied by physical injury, the plaintiff must make the following showing:

> One, the wrongdoer's conduct was intentional or reckless. This element is satisfied where the wrongdoer had the specific purpose of inflicting emotional distress or where he intended his specific conduct and knew or should have known that emotional distress would likely result. Two, the conduct was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality. This requirement is aimed at limiting frivolous suits and avoiding

litigation in situations where only bad manners and mere hurt feelings are involved. Three, there was a causal connection between the wrongdoer's conduct and the emotional distress. Four, the emotional distress was severe.

*Womack v. Eldridge*, 215 Va. 338, 210 S.E.2d 145, 148 (1974). And as this court has previously noted with respect to this cause of action, a preliminary question that must be resolved is:

> Whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability.

*Wise v. General Motors Corp.*, 588 F.Supp. 1207, 1209 (W.D.Va.1984) (quoting RESTATEMENT (SECOND) OF TORTS § 46, comment h (1965)).

As with his claim of tortious interference, plaintiff essentially alleges that he suffered emotional distress as a result of Piggly Wiggly's intentional and unjustified interference with both his employment and his right to collect unemployment compensation, which he further contends were acts of outrageous conduct. Because plaintiff was an at-will employee, the court concludes that he has not stated a cause of action for emotional distress as a result of being fired. It has already been pointed out that the employment at-will doctrine is followed in Virginia. As evidenced by this court's recent opinion, *Thompson v. American Motor Inns, Inc.*, 623 F.Supp. 409 (W.D.Va.1985), exception to the doctrine has nevertheless been made under Virginia law, as well as the law of many other jurisdictions. The exception carved out in *Thompson*, however, was premised on the rule in Virginia that employment for no specific duration creates only a rebuttable presumption of employment-at-will status, with the court finding that there the presumption was in fact rebutted based on an

employee handbook creating an implied contract. *Id.* at 417. Conversely, for purposes of the present case the court is unable to find any authority from the decisions of the Virginia Supreme Court for opening the door even further on the employment at-will doctrine as applied in Virginia where the plaintiff is bringing an action in tort over his termination and was concededly an at-will employee.

■ The court does find, however, that plaintiff states a cause of action for intentional infliction of emotional distress as a result of Piggly Wiggly's alleged intentional interference with his right to unemployment compensation. First, as the court explained above in its analysis of the tortious interference claim, the context of this claim also goes beyond the employment relationship. The action arises not as a result of plaintiff's termination, but rather over Piggly Wiggly's alleged efforts to prevent plaintiff from collecting unemployment benefits by manufacturing through its agent false information about him. Second, based on decisions addressing claims of intentional infliction of emotional distress under Virginia law, *see, e.g., Womack,* 210 S.E.2d 145; *Morgan v. American Family Life Assurance Co.,* 559 F.Supp. 477, 492 (W.D.Va.1983) (insured's allegations of insurer's bad faith refusal to pay insurance benefits stated cause of action for intentional infliction of emotional distress), the court concludes that "reasonable men may disagree as to whether defendant's conduct was extreme and outrageous and whether plaintiff's emotional distress was severe," thus presenting a question of fact for a jury. *Womack,* 210 S.E.2d at 148.

■ But the court also finds that since plaintiff has stated a cause of action for the independent tort of intentional interference with a prospective economic opportunity or contractual relationship, based on the authority of *Sea-Land Service, Inc. v. O'Neal,* 224 Va. 343, 297 S.E.2d 647 (1982), he may, to the extent tortious interference is proven, recover damages for any emotional distress suffered as a result thereof

under the normal evidentiary standard for such damages. That is, he would not have to prove that Piggly Wiggly's conduct was "extreme and outrageous" to be entitled to recover for his alleged emotional suffering. In *Sea-Land,* the plaintiff employee, O'Neal, had brought an action against the defendant employer, Sea-Land Service, Inc., for its alleged breach of O'Neal's employment contract and fraud in inducing O'Neal to resign from one position in return for a promise, which was never fulfilled, of employment in another. *Id.* at 648. She sought damages for, *inter alia,* her embarrassment and humiliation resulting from the loss of employment. *Id.* at 652. On appeal, the Virginia Supreme Court upheld the jury instruction permitting an award of such "distress damages" after finding that Sea-Land had committed intentional fraud against O'Neal. The court reasoned:

> We established in Part II, *supra,* that Sea-Land committed an intentional tort against O'Neal. Previously, in at least five classes of cases involving intentional torts, we have approved the recovery of damages for humiliation, embarrassment, and similar harm to feelings, although unaccompanied by actual physical injury, *where a cause of action existed independently of such harm.* The cases and the torts are:
>
> *Peshine v. Shepperson,* 58 Va. (17 Gratt.) 472, 486 (1867) (deliberate trespass); *Ches. & Pot. Tel. Co. v. Carless,* 127 Va. 5, 9, 102 S.E. 569, 570 (1920) (wrongful suspension of telephone service); *W.T. Grant Co. v. Owens,* 149 Va. 906, 925, 141 S.E. 860, 866 (1928) (false imprisonment); *James v. Powell,* 154 Va. 96, 117, 152 S.E. 539, 547 (1930) (libel); and *Spitzer v. Clatterbuck,* 202 Va. 1001, 1006–07, 121 S.E.2d 466, 469–70 (1961) (malicious prosecution).
>
> By way of comparison, the potential for distress to O'Neal from the loss of her job through Sea-Land's trickery was not substantially less than the harm caused by the torts involved in the cases

cited above. Similarly, the wrong committed by Sea-Land was not materially less egregious than the conduct of at least several of the defendants involved in the earlier decisions.

*Sea-Land,* 297 S.E.2d at 653 (emphasis in original). Piggly Wiggly's alleged conduct is equally comparable in terms of its egregiousness and its potential for causing plaintiff emotional harm. Plaintiff therefore may be entitled to recover distress damages under this alternative basis of relief.

### C. Claims Against National Security

The claims against National Security are for conspiracy under VA. CODE § 18.2–499 (1965 added vol.), common law and statutory libel and slander, tortious interference with an economic opportunity and/or contractual relations, and outrageous conduct. In the court's memorandum opinion and order dated June 17, 1985 dismissing the conspiracy claim against Piggly Wiggly, the court, unaware that process had not been made on National Security, dismissed the claim as to it as well. Now that National Security has been made a proper party defendant to this action, the court will dismiss the conspiracy claim against it for the reasons stated in the June 17, 1985 opinion. In short, the conspiracy provision has been construed to exclude employment from its scope. The two categories of "persons" protected by § 18.2–499 are corporations and individuals who own or operate a business. *See Campbell v. Board of Supervisors of Charlotte County,* 553 F.Supp. 644 (E.D.Va.1982); *Moore v. Allied Chemical Corp.,* 480 F.Supp. 364 (E.D.Va. 1979).

■ As to the claim of libel and slander, both at common law and under Virginia's so-called "insulting words" statute, VA. CODE § 8.01–45 (1984 repl. vol.), the court will treat the claim as one cause of action. "The trial of an action for insulting words is completely assimilated to the common law action for libel and slander, and from the standpoint of the Virginia law it is an action for libel and slander." *Mills v.*

*Kingsport Times-News,* 475 F.Supp. 1005, 1007 (W.D.Va.1979) (quoting *Carwile v. Richmond Newspapers,* 196 Va. 1, 82 S.E.2d 588 (1954)). According to the complaint, this action arose on or before August 10, 1983, the date of Mullins' affidavit that was given to the Virginia Employment Commission and that contained the alleged false information concerning the plaintiff. National Security was first made a party defendant to this proceeding on July 24, 1985 when plaintiff filed his second complaint in bankruptcy court. This action is therefore barred by Virginia's one-year statute of limitations, VA. CODE § 8.01–248 (1984 repl. vol.), which is applicable to actions for defamation. *Morrissey v. William Morrow Co.,* 739 F.2d 962, 967 (4th Cir.1984).

■ Plaintiff's claim of tortious interference against National Security is based on the same allegations that gave rise to this claim against Piggly Wiggly. As with Piggly Wiggly, the court finds that plaintiff fails to state such a cause of action against National Security with respect to his termination. It was previously explained that the tort occurs when an intervening party intentionally and unjustifiably induces or causes a breach or termination of a relationship or expectancy between other parties. Since plaintiff alleges that Piggly Wiggly first decided to fire him, with National Security then being hired to assist Piggly Wiggly in bringing about plaintiff's termination in such a way that the company would not be subject to increased unemployment compensation taxes, it cannot be said that National Security induced or caused Piggly Wiggly to make the decision to terminate plaintiff's employment. *Cf. International Union, UMWA v. Eastover Mining Co.,* 623 F.Supp. 1141, 1146 (W.D.Va.1985) (where this court found that third-party tortiously induced breach of contract between UMWA and signatory mining company).

■ National Security was nevertheless acting as Piggly Wiggly's agent in helping to bring about Piggly Wiggly's alleged scheme of preventing plaintiff from

**898**

being entitled to unemployment compensation. Thus, for the same reasons that the court found that plaintiff states a cause of action against Piggly Wiggly for interference with a prospective economic opportunity and/or contractual relationship with respect to his right to unemployment benefits, the court now finds that plaintiff states a cause of action on the same claim against National Security. Based on plaintiff's allegations, National Security here fits the definition of an intervening party that induces or causes a breach or termination of a relationship or expectancy between other parties. Furthermore, contrary to National Security's contention that this action is barred under Virginia's one-year statute of limitations, VA. CODE § 8.01–248 (1984 repl.vol.), the court finds that the action is appropriately governed by Virginia's five-year statute of limitations for actions for injury to property, VA. CODE § 8.01–243 (1984 repl. vol.), and is therefore timely. *See Almond v. Kent,* 321 F.Supp. 1225 (W.D.Va.1970), rev'd on other grounds, 459 F.2d 200 (4th Cir.1972) (five-year limitations period governs actions for damages to one's property, estate or business).

 The court also finds, based on the same rationale that was applied as to Piggly Wiggly, that plaintiff states a cause of action for emotional distress against National Security over its interference with his right to collect unemployment compensation, but not over his termination of employment. And again, contrary to National Security's contention that this action is also barred by Virginia's one-year statute of limitations, the court finds, as it has previously so found, that such an action is governed by Virginia's two-year statute of limitations governing actions for personal injury, VA. CODE § 8.01–243 (1984 repl. vol.), and as such is timely. *See Warren v. Bank of Marion,* 618 F.Supp. 317, 324 (W.D.Va.1985).

### D. Claims Against Mullins

 Each of the claims against National Security has also been alleged against defendant Mullins. Furthermore, Mullins has conceded that he was at all relevant times an agent of National Security, and it is through the alleged conduct of Mullins, as agent of National Security, that National Security's alleged liability arises. Most of the analysis above regarding the claims against National Security is therefore applicable as to Mullins. Mullins argues that he cannot be held personally liable because he was acting at all relevant times within the scope of his agency, and he supports this contention by his sworn affidavit. The court, however, is unpersuaded by this argument. "From the standpoint of a person injured by the wrongful act of another, the relation of principal and agent is immaterial, and the status of the wrongdoer in that connection is of no consequence." 3 AM.JUR.2d AGENCY § 300 (1962); *see Wood v. Standard Products Co.,* 456 F.Supp. 1098, 1099 (E.D.Va.1978) (agent is responsible, as an independent party, for his tortious conduct). Both Mullins and National Security are thus potentially liable for Mullins' alleged tortious conduct.

Consequently, based on the analysis above regarding the claims against National Security, the court finds that plaintiff states causes of action against Mullins both for tortious interference with a prospective economic opportunity and/or contractual relationship over his right to employment compensation, but not over his employment termination, and for emotional distress. However, as with National Security, plaintiff fails to state a cause of action against Mullins for statutory conspiracy. Finally, plaintiff's claim against Mullins for libel and slander is also time-barred, as it was against National Security, by the one-year statute of limitations for actions for defamation. The action arose on or before August 10, 1983; Mullins was dismissed on December 15, 1983 from the adversary proceeding filed on September 20, 1983; Mullins was not made a party defendant again until July 24, 1985.

### III. MULLINS' MOTION FOR SANCTIONS

 Defendant Mullins' motion for sanctions is based on the following events.

As described above, plaintiff dismissed Mullins as a defendant on December 15, 1983 from the action originally filed on September 20, 1983. A year and a half later, July 17, 1985, the court dismissed for lack of service of process the claims against National Security. Also, prior to National Security's dismissal, the court, unaware that the service of process had not been made, dismissed on the merits the claim against National Security for statutory conspiracy. Plaintiff's counsel, S. Strother Smith, III, who has conceded that he was angered over the dismissal of National Security, thereafter proceeded to reinstitute the same suit originally filed, and named as defendants, among others, Mullins and National Security.

The defendants subsequently filed motions to dismiss, which were scheduled for oral argument on October 7, 1985 at Big Stone Gap, Virginia. David Nagle, counsel for Mullins and National Security, traveled to Duffield, Virginia on Sunday, October 6, 1985, spent the night, and appeared in court for the hearing as scheduled. Mr. Smith, however, failed to appear at the scheduled time and indeed did not appear at any time that day. During the morning of October 7, the court was advised by Mr. Smith's office that he was completing a jury trial in Bristol, Virginia that had been carried over from the previous Friday, but that he could be in Big Stone Gap by 1 o'clock p.m. Then, at noon that day, Mr. Smith's office contacted the court to advise that Mr. Smith had to be in Lebanon, Virginia in state court for a contempt of court citation and could not appear in Big Stone Gap as previously advised. The court was informed, however, per a call to Lebanon, that none of the local judges were holding court that day, and that Mr. Smith was not in the Lebanon courthouse. Mr. Smith ultimately never personally contacted the court or Mr. Nagle at any time on October 7, 1985. Furthermore, the court later learned that on the afternoon of that day, Mr. Smith was actually in the Federal Building in Abingdon, Virginia for an administrative hearing. Oral argument, which was heard on the record, was re-scheduled for the next day, October 8, 1985. At Mr. Smith's request, however, that portion of the hearing regarding sanctions for his failure to appear at the previously scheduled hearing was held in chambers without a court reporter.

Sanctions are unfortunately necessary in this case. Conduct such as that displayed by plaintiff's counsel cannot be tolerated. Accordingly, by way of sanctions, this case is dismissed with prejudice as to Mullins, individually, the suit against him having been dismissed on December 15, 1983 and then refiled on July 24, 1985 as an act of spite by Mr. Smith due to his anger at the dismissal of the corporate defendant, National Security, for lack of service of process. Most significantly, the fault for the dismissal lies with Mr. Smith, who was even advised by the defendants' counsel prior to dismissal that such service of process had not been obtained. Furthermore, as additional sanctions against Mr. Smith personally, Mr. Smith shall pay defendants' counsel, Mr. Nagle, for his travel expenses, two nights' lodging, meals, and sixteen hours of attorney's fees at seventy-five dollars per hour, for his three-day trip for the foregoing hearing.

## IV.

### SUMMARY

To summarize, defendant Piggly Wiggly's motion to dismiss is granted on the claim against it for statutory libel and slander (with the claims of common law libel and slander and statutory conspiracy having been previously dismissed), but denied as to plaintiff's claims against it for emotional distress and tortious interference with an economic opportunity and/or contractual relation as the claims relate to his rights to unemployment compensation; these two claims may not be made, however, in the context of his termination of employment. With respect to defendant National Security's motion to dismiss, the motion is granted on the claims against it for statutory and common law libel and slander and statutory conspiracy, but de-

nied as to plaintiff's claims against it for emotional distress and tortious interference with an economic opportunity and/or contractual relation, with these two claims limited against it, as well, to the context of plaintiff's rights to unemployment compensation. Finally, as to defendant Mullins, the court would treat the claims against him as it is treating the claims against National Security, but for Mullins' motion for sanctions. In light of this motion, however, Mullins is dismissed with prejudice as a party defendant to this suit, and further sanctions are imposed against plaintiff's counsel personally, as outlined above.