**UNLIMITED SCREW PRODUCTS, INC., Plaintiff,**

v.

**John MALM, and Sales Systems, Ltd., Defendants.**

Civ. A. No. 91–28–NN.

United States District Court, E.D. Virginia, Newport News Division.

Oct. 16, 1991.

concern for quality control, Newport News decreased the number of its fastener suppliers and subjected those remaining suppliers to more stringent, on-site quality audits. Defendant Malm served as a quality control inspector for Newport News, responsible for evaluating Newport News' fastener suppliers, including plaintiff and defendant Sales Systems. Based on a recommendation from Malm, Newport News terminated its relationship with plaintiff. Sales Systems subsequently experienced a substantial increase in sales to Newport News. Malm then left Newport News in 1987 to work for Sales Systems as a full-time quality control manager. Plaintiff claims that defendants acted together to disqualify plaintiff as a supplier and to qualify defendant Sales Systems.

After the case was transferred to this district in January, 1991, defendant Sales Systems filed three counterclaims in June, 1991, setting forth a Lanham Act claim, as well as two state claims, for damages to Sales Systems from plaintiff's stamping its "U" symbol on certain fasteners sold to Newport News from 1983 to 1987. Plaintiff submitted a motion to dismiss defendant's counterclaims for failure to state a cause of action, contending that the statute of limitations barred relief. Plaintiff also moved for summary judgment on defendant's counterclaims, and defendants moved for summary judgment on plaintiff's complaint. For the reasons stated below, the court DISMISSES defendant's Lanham Act, misrepresentation, and tortious interference with business expectancy counterclaims; DENIES defendants' motion for summary judgment on the Robinson–Patman Act and intentional interference with business relations claims; and GRANTS defendants' motion for summary judgment on plaintiff's prima facie tort and conversion claims.[1]

James Francis Thornton, III, Edward Dwight David, Jones, Blechman, Woltz & Kelly, P.C., Newport News, Va., Ronald W. Meister, Jane M. Sovern, Meister, Leventhal & Slade, New York City, for plaintiff.

Antje E. Huck, Newport News, Va., Daniel Gilligan Grove, Keck, Mahin & Cate, Fairfax, Va., William J. O'Brien, II, Charles B. Molster, III, Keck, Mahin & Cate, Washington, D.C., for defendants.

## OPINION AND ORDER

REBECCA BEACH SMITH, District Judge.

Plaintiff filed this action in April, 1988, claiming commercial bribery under the Robinson–Patman Act and various tortious acts committed by defendants in connection with sales of fasteners to Newport News Shipbuilding and Drydock Company ("Newport News"). As a result of an increased

## I.

### Motion to Dismiss

First, the parties dispute which statute of limitations applies to the counterclaims.

---

1. This disposition makes it unnecessary to consider plaintiff's motion for summary judgment on defendant's counterclaims.

Second, defendant Sales Systems claims that the statute of limitations is tolled from the date plaintiff filed its complaint in 1988, because the subject matter of the counterclaims arises out of the same transaction or occurrence as plaintiff's complaint. *See* Va.Code § 8.01–233(B) (1984).

## A. Applicable Statute of Limitations

### 1. Lanham Act

■ Defendant's first counterclaim alleges that plaintiff violated section 43(a) of the Lanham Act, which prohibits deceptive advertising. 15 U.S.C. § 1125 (1988). Plaintiff stamped its fasteners with a "U" symbol, thus allegedly causing Newport News confusion or mistake as to the origin of plaintiff's goods.[2] Because the Lanham Act does not contain its own statute of limitations, a federal court must look to the state law that most closely resembles the federal statute. *E.g., Monkelis v. Scientific Sys. Servs.,* 653 F.Supp. 680, 684 (W.D.Pa.1987); *Fox Chem. Co. v. Amsoil, Inc.,* 445 F.Supp. 1355, 1357 (D.Minn.1978).

■ A number of courts have concluded that claims under section 43(a) of the Lanham Act are most analogous to fraud claims. *See, e.g., Monkelis,* 653 F.Supp. at 684 ("Lanham Act is designed to prohibit fraudulent advertising"); *PepsiCo, Inc. v. Dunlop Tire & Rubber Corp.,* 578 F.Supp. 196, 199 (S.D.N.Y.1984) (Congress designed Lanham Act "to address claims of deception and misrepresentation, constituting trademark infringement and unfair competition.... Such claims can best be analogized to causes of action sounding in fraud."); *Fox Chem. Co.,* 445 F.Supp. at 1359 (Lanham Act covers false advertising and is most closely related to fraud). In agreement with these cases, this court concludes that Virginia's statute of limitations for fraud most closely resembles the federal policy reflected in the Lanham Act.

■ Virginia's statute of limitations for fraud claims recently changed. In 1987, the Virginia legislature revised the two-year limitations period applicable to personal injuries specifically to include fraud claims. *See* Va.Code § 8.01–243(A) (Supp. 1991). That amendment, however, applies only to causes of action accruing on or after July 1, 1987. *See id.* (legislative history). As discussed below, *infra* at 1126, defendant's claim accrued at the latest in the beginning of 1987. Thus, the revised two-year limitations period does not apply to defendant's claim. Instead, the one-year limitations period in effect prior to July 1, 1987, for personal action not covered by any other statute of limitations applies to defendant's Lanham Act counterclaim. Va.Code § 8.01–248 (1984);[3] *see Bush Dev. Corp. v. Harbour Place Assocs.,* 632 F.Supp. 1359, 1366–67 (E.D.Va.1986); *J.F. Toner & Son, Inc. v. Staunton Prod. Credit Ass'n,* 237 Va. 155, 158, 375 S.E.2d 530, 531 (1989); *House v. Kirby,* 233 Va. 197, 201, 355 S.E.2d 303, 306 (1987); *Pigott v. Moran,* 231 Va. 76, 81, 341 S.E.2d 179, 182 (1986).[4]

■ To escape application of the Virginia fraud limitations period, defendant contends that the Lanham Act is most synonymous with an unfair competition statute, and that, therefore, this court should apply the limitations period governing Virginia's unfair competition cause of action. This argument is unpersuasive. Although the

---

2. Newport News required the fasteners it purchased to carry the manufacturer's identification, which enabled Newport News to trace readily the manufacturing source of these items after installation. Because plaintiff allegedly is only a distributor-supplier, not a manufacturer, its "U"-stamping practice allegedly created confusion about the manufacturing source of its fasteners.

3. This section states: "Every personal action, for which no limitation is otherwise prescribed, shall be brought within one year after the right to bring such action has accrued."

4. The parties dispute the time period of plaintiff's allegedly wrongful actions, but according to defendant's counterclaims, plaintiff's actions ceased no later than 1987. The outcome of this case would be the same, however, regardless of whether the one- or two-year limitations period is applied, because the statute of limitations began to run sometime in 1987 and was not tolled at any time before the filing of defendant's counterclaims in June, 1991. *See infra* at 1128–29.

Lanham Act prohibits deceptive advertising practices that have the effect of creating unfair competition, Virginia has no statute of limitations specifically applicable to unfair competition claims.[5] Moreover, although the Lanham Act addresses unfair competition generally, section 43(a) applies to fraudulent practices specifically, thus making the analogy to Virginia's limitation period for fraud more appropriate.

Under Virginia Code § 8.01–249(1), an action for fraud accrues when the complaining party discovers the fraud or by the exercise of due diligence reasonably should have discovered it. The counterclaims allege that plaintiff misleadingly marked fasteners it supplied to Newport News with a "U" between 1983 and 1987. Defendant Sales Systems claims that it lost business from Newport News that it would otherwise have obtained had Newport News been aware of plaintiff's misleading practice. Defendant Malm, represented by the same counsel as defendant Sales Systems, knew of the alleged fraud in 1986 because he prepared the 1986 audit report that revealed plaintiff's "U"-stamping practice. Furthermore, in 1987, Malm went to work for Sales Systems. Thus, defendants discovered the fraud, or at least should have discovered the fraud, by 1987, at which time the one-year limitations period began running.

### 2. Misrepresentation

Defendant claims that plaintiff's "U"-stamping practice constituted false representations directed at Newport News, and that but for plaintiff's actions, defendant would have enjoyed a greater volume of sales and profits from its trade with Newport News. For the purpose of applying the correct statute of limitations, however, common law misrepresentation cannot be distinguished from fraud. The law

employs the two terms interchangeably. *See, e.g., House v. Kirby*, 233 Va. 197, 200, 355 S.E.2d 303 (1987) ("Fraud ... is purely a tort; it involves a misrepresentation, detrimentally relied upon, that occasions a loss."); *Jefferson Standard Life Ins. Co. v. Hedrick*, 181 Va. 824, 833–34, 27 S.E.2d 198, 202 (1943) (interchanging the terms "false representation," "fraud," and "deceit" in stating the rule for misrepresentation long adopted and approved in Virginia). The court, therefore, agrees with plaintiff that no reasonable interpretation of misrepresentation distinguishes it from fraud. Thus, like the Lanham Act claim, the one-year limitations period of Va.Code § 8.01–248 applies to defendant's misrepresentation counterclaim, and the claim began to run in 1987, when defendant discovered or should have discovered the fraud. *See* Va.Code § 8.01–249(1).

Furthermore, even if Virginia's statute of limitations for fraud does not apply to defendant's misrepresentation counterclaim, the court would grant plaintiff's motion for summary judgment on this counterclaim. The court may grant summary judgment under Rule 56 of the Federal Rules of Civil Procedure if, viewing the facts in the light most favorable to the nonmoving party, the record contains no genuine issue of material fact and "the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). To avoid entry of summary judgment, the nonmoving party must introduce evidence beyond the mere pleadings to create an issue of material fact on "an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

---

5. Defendant relies on *Hoey v. Dexel Sys. Corp.*, 716 F.Supp. 222, 224 (E.D.Va.1989), for the proposition that Virginia applies its five-year statute of limitations for injury to property, Va. Code § 8.01–243(B), to unfair competition claims. The court in *Hoey*, however, without explanation characterized the plaintiff's claim as an injury to property. As discussed herein, *infra* at 1127–28, the Virginia Supreme Court, as well as other federal courts, have analyzed the difference between injuries to person and injuries to property in the context of applying the statute of limitations. These courts have adopted a narrow interpretation of property inconsistent with the conclusion in *Hoey*.

One of the elements of a misrepresentation claim is that the party asserting the claim be the party to whom false representations were made. *Jefferson Standard*, 181 Va. at 833, 27 S.E.2d at 202. Defendant has come forward with no evidence that plaintiff made false representations to defendant, or had any reason to anticipate that defendant would rely upon plaintiff's alleged misrepresentations to Newport News.

### 3. Tortious Interference with Business Expectancy

■ Defendant claims that plaintiff's "U"-stamping practice intentionally interfered with its business expectancy by precluding defendant from obtaining purchase orders from Newport News for the period 1983 to 1987. Both parties apparently believe that the five-year limitations period for injury to property governs defendant's counterclaim.[6] However, the decision as to the applicable statute of limitations turns on whether the injury is to the defendant corporation's "person" or to the corporation's "property."[7]

The Fourth Circuit addressed a similar situation in *Brown v. American Broadcasting Co., Inc.*, 704 F.2d 1296, 1303–04 (4th Cir.1983), in which an insurance salesperson asserted claims, among others, of intentional interference with business and conspiracy to interfere with business. The court concluded that these claims were nothing more than actions to recover for consequential damages to the business caused by personal injury to reputation. *Id.* The claimant failed to show direct injury to property to qualify for the benefit of the five-year property limitations period. *Id.* at 1303 (citing *Evans v. Sturgill*, 430

F.Supp. 1209 (W.D.Va.1977)). Further, in *LaVay Corp. v. Dominion Fed. Sav. & Loan Ass'n*, 830 F.2d 522, 527 (4th Cir. 1987), *cert. denied*, 484 U.S. 1065, 108 S.Ct. 1027, 98 L.Ed.2d 991 (1988), the court held that injury to a partnership interest did not constitute injury to property. The court reasoned that such a characterization "goes too far," and "[i]t converts every breach of ... contract into the equivalent of an injury to real property." *Id.*

This analysis is consistent with the Virginia Supreme Court's reasoning in *Pigott v. Moran*, 231 Va. 76, 81, 341 S.E.2d 179, 182 (1986), in which the court held that a misrepresentation claim regarding a real estate transaction did not allege an injury to property:

> Fraud is a tort. The wrongful act is aimed at the person and, when sued upon at law, fraud will support a recovery for financial damage personal to the individual. This is the gist of plaintiff's claim.... *The defendants' conduct was directed at the plaintiffs personally and not their property, real or personal.*

*Id.* at 81, 341 S.E.2d 179. (citations omitted) (emphasis added).

Although the court in *Pigott* considered a fraud claim, tortious interference also is a tort. The tortious interference with business expectancy in this case is directed at the corporation's person, not its property. *See also LaVay*, 830 F.2d at 527 (recognizing that five-year statute normally applies to cases of trespass in tort); *Bush Dev. Corp. v. Harbour Place Assocs.*, 632 F.Supp. 1359, 1366–67 (E.D.Va.1986) (following *Pigott*); *J.F. Toner & Son, Inc. v.*

---

**6.** The parties rely on *Welch v. Kennedy Piggly Wiggly Stores, Inc.*, 63 B.R. 888, 898 (W.D.Va. 1986). This reliance is misplaced. The court in *Welch* relied on case authority that interpreted the statute of limitations provisions prior to legislative changes in 1977 and the Virginia Supreme Court's subsequent interpretations of those changes. *See infra* at 1127–28 and cases cited therein. None of the pre–1977 versions of the statutes are applicable to the case at bar.

**7.** The relevant portions of Virginia's statute of limitations for personal actions provides:

> A. Unless otherwise provided by statute, every action for personal injuries, whatever the theory of recovery, except as provided in B hereof, shall be brought within two years next after the cause shall have accrued.
> B. Every action for injury to property ... shall be brought within five years next after the cause of action shall have accrued.

Va.Code § 8.01–243 (1984). The 1984 statute applies to this case; however, this version is substantially the same as the current version, with the addition of fraud to part A. *See* Va. Code § 8.01–243 (Supp.1991); *supra* at 1125.

*Staunton Prod. Credit Ass'n,* 237 Va. 155, 158, 375 S.E.2d 530, 531 (1989) ("Because fraud invariably acts upon the person of the victim rather than upon property, its consequence is personal damage rather than injury to property."); *House v. Kirby,* 233 Va. 197, 201, 355 S.E.2d 303, 306 (1987) (reaffirming *Pigott*).

Defendant's alleged injury to its business interest in the form of speculative lost profits, therefore, is not an injury to property that qualifies for the five-year limitations period. Rather, the two-year personal injury statute applies, and the latest it began running was 1987, the last year in which plaintiff allegedly wrongfully stamped its fasteners with a "U" symbol. *See* Va.Code § 8.01–230 ("limitation period shall begin to run from the date the injury is sustained").

### B. The Statute of Limitations is Not Tolled

▮▮▮ The actual date a defendant files a counterclaim generally is the operative date for determining whether the defendant has met the time requirements of the applicable statute of limitations. *See* Va.Code §§ 8.01–228, 8.01–233(A). Under Virginia Code § 8.01–233(B), however, commencement of plaintiff's action tolls the limitations period if the subject matter of the counterclaims arises out of the same transaction or occurrence upon which the plaintiff bases its claims. Whether a one-, two-, or five-year limitations period applies, defendant Sales Systems contends that its counterclaims arise from the same transaction or occurrence as the subject matter of plaintiff's complaint.

▮▮▮ In *Sue & Sam Mfg. Co. v. B–L–S Constr. Co.,* 538 F.2d 1048, 1051–53 (4th Cir.1976), the Fourth Circuit set out commonly used tests to determine whether a counterclaim arises out of the same transaction or occurrence: (1) whether the issues of fact and law raised by the claim and the counterclaim are largely the same; (2) whether *res judicata* would bar a subsequent suit on the counterclaim, absent the compulsory counterclaim rule; (3) whether substantially the same evidence supports or refutes the claim as well as the counterclaim; and (4) whether the claim has any logical relationship to the counterclaim. Applying these tests, the court concludes that defendant's counterclaims do not arise from the same transaction or occurrence as the subject matter of plaintiff's complaint.[8]

The issues of fact and law in the complaint and counterclaims are not largely the same in this case. The subject matter of plaintiff's complaint is the defendants' actions that allegedly created a conspiracy in 1986 and 1987 to terminate plaintiff's role as a supplier of fasteners to Newport News and to divert this business from plaintiff to defendant Sales Systems. The subject matter of defendant Sales Systems' counterclaims, however, is the period from 1983 to 1987, during which plaintiff's allegedly misleading "U"-stamping practice caused defendant to lose business revenue from Newport News. Defendant's counterclaims do not arise from the conspiratorial actions that form the basis of plaintiff's complaint. In fact, plaintiff's allegedly misleading practices arose before and independently of any alleged conspiracy between defendants.

Proof of defendant's counterclaims, therefore, requires separate evidence than proof of plaintiff's complaint. Although defendants may present evidence of plaintiff's allegedly wrongful "U" stamping to establish a legitimate reason for Newport News' termination of plaintiff as a supplier, those facts are completely unrelated to

---

8. Plaintiff filed its complaint in April, 1988. After defendant Sales Systems contested personal jurisdiction and requested transfer, defendants Sales Systems and Malm filed their answer in December, 1989. Defendant Sales Systems waited until June, 1991, to seek leave from the court to amend its answer to include these counterclaims. On July 5, 1991, the court in its discretion permitted defendant to amend its answer, pursuant to Rule 13(b). It would seem that if defendant Sales Systems considered its counterclaims to be compulsory, then under Rule 13(a) of the Federal Rules of Civil Procedure, it would have filed them with its answer in 1989. Notably, counsel for defendant Sales Systems has not changed at any time during the pendency of this case.

what plaintiff must prove to prevail. They are separate transactions that support a permissive counterclaim, but that do not arise from the same transaction or occurrence about which plaintiff complains. Accordingly, principles of *res judicata* would not bar a subsequent suit on the counterclaims because the proof and issues are unrelated to the proof and issues raised by the complaint.

For the foregoing reasons, plaintiff's commencement of its action in April, 1988, did not toll the limitations period because these counterclaims did not arise from the same transaction or occurrence as the subject matter of plaintiff's complaint.

### C. Statute of Limitations Conclusion

In conclusion, Virginia's one-year statute of limitations, Va.Code § 8.01–248 (1984), bars defendant's Lanham Act and misrepresentation counterclaims. These actions accrued at the latest in 1987, but were not filed until June, 1991, more than four years later. Virginia's two-year limitations period for injury to the person, Va.Code § 8.01–243(A) (1984), bars defendant's tortious interference with business expectancy claim because this claim also began running at the latest in 1987, when plaintiff ceased supplying fasteners to Newport News. The two-year period had expired when defendant filed the counterclaim in June, 1991.

### II.

### Defendant's Motion for Summary Judgment

Defendants move for summary judgment on each of four counts in plaintiff's complaint. As stated above, summary judgment is appropriate if, viewing the facts in the light most favorable to the nonmoving party, the record contains no genuine issue of material fact and "the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The district court's function,

however, "is not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2510. Also, "[s]ummary judgment is seldom appropriate in cases in which particular states of mind are decisive elements of [a] claim." *Magill v. Gulf and W. Indus., Inc.*, 736 F.2d 976, 979 (4th Cir.1984). As set out below, the court finds genuine issues of material fact in plaintiff's Robinson–Patman Act and intentional interference with contract claims and, therefore, DENIES defendants' motion for summary judgment on those counts. The court, however, GRANTS defendants' motion for summary judgment on the prima facie tort and conversion claims.

### A. Robinson–Patman Act and Intentional Interference with Business Relations

Section 2(c) of the Robinson–Patman Act [9] makes it unlawful in certain commercial contexts to pay or receive "anything of value as a commission, brokerage, or other compensation, ... except for services rendered in connection with the sale or purchase of goods, wares, or merchandise." 15 U.S.C. § 13(c). Intentional interference with business relations requires plaintiff to show "a reasonable certainty that, absent defendant's intentional misconduct, plaintiff would have continued in the relationship or realized the expectancy." *Glass v. Glass*, 228 Va. 39, 51–52, 321 S.E.2d 69, 77 (1984); *see Chaves v. Johnson*, 230 Va. 112, 120, 335 S.E.2d 97, 102 (1985); *Allen Realty Corp. v. Holbert*, 227 Va. 441, 449, 318 S.E.2d 592, 597 (1984) (cases recognizing cause of action in Virginia for interference with "prospective" contractual relationship or business "expectancy"). The similarity of these claims and their evidentiary support justify considering the Robinson–Patman Act and intentional interference counts together. Both claims require plaintiff to show similar types of intentional misconduct by defendants.

---

**9.** Congress enacted the Robinson–Patman Act in 1936 to prohibit large buyers or sellers from circumventing the discriminatory price prohibitions of the Clayton Act, 15 U.S.C. §§ 12, *et seq.*

Plaintiff alleges that since 1979 it had sold fasteners to Newport News pursuant to contracts and agreements with Newport News, and that defendants intentionally interfered with plaintiff's business relations with Newport News by causing Newport News to terminate its business relationship with plaintiff. Specifically, plaintiff contends that defendant Malm, as inspector for Newport News, gave plaintiff unjustified poor quality ratings, and that he acted in concert with Sales Systems. Plaintiff alleges that defendant Sales Systems offered Malm a job, which he ultimately accepted, in return for the poor evaluations and resulting recommendation that Newport News terminate its business relationship with plaintiff.

Defendant contends that plaintiff has come forward with no evidence to support an inference of conspiracy between defendants Malm and Sales Systems. Although plaintiff has failed to provide evidence of unlawful payments from Sales Systems to Malm, other than the conferral of a job, plaintiff has come forward with the following other evidence of conspiracy that creates genuine issues of material fact and that the court must consider in the light most favorable to plaintiff.

Before Malm's arrival as an inspector, plaintiff received good quality ratings, and Sales Systems received poor ratings. After his first quality audit of plaintiff in May, 1986, Malm gave plaintiff a good rating. Malm allegedly suggested to plaintiff that Malm was in a position to give them all of Newport News' business. After a second quality audit of plaintiff in September, 1986, Malm reversed his prior good evaluation of plaintiff. Malm also reversed his evaluation of Sales Systems, from poor to good. Although the parties do not dispute some of these bare facts, they do dispute Malm's state of mind when he formulated his evaluations. The parties also contest evidence suggesting that Malm worked for Sales Systems while still employed at Newport News, and that Malm took unprecedented direct action to discontinue plaintiff's supply of fasteners to

Newport News and made contradictory statements about this action.

■ Although the Fourth Circuit has not explicitly decided whether commercial bribery violates section 2(c) of the Robinson–Patman Act, the court has implicitly recognized section 2(c)'s application in certain commercial bribery contexts. *See generally Stephen Jay Photography, Ltd. v. Olan Mills, Inc.*, 903 F.2d 988, 991–93 (4th Cir.1990) (finding no factual violation in the case at bar, but collecting and recognizing the application of section 2(c) in various other commercial bribery cases). In the factual context of this case, this court concludes that an alleged job offer resulting in actual employment does constitute something of value within the meaning of the Act. But whether defendant Sales Systems bribed defendant Malm with the job offer is a question for a jury. Moreover, whether there was any intentional misconduct on the part of defendants and, if so, whether plaintiff's business relationship with Newport News would have continued absent this misconduct are matters of fact for the jury to determine. The existence of such genuine issues of material fact requires the court to DENY defendant's motion for summary judgment on plaintiff's Robinson–Patman Act and intentional interference with business relations claims.

### B. *Prima Facie Tort*

■ Plaintiff alleges that defendants' conduct, as described above, intended to cause harm to plaintiff, thus constituting a prima facie tort. Virginia, however, has not recognized prima facie tort as a valid cause of action. *See Meadow Ltd. Partnership v. Heritage Sav. & Loan Ass'n*, 639 F.Supp. 643, 653 (E.D.Va.1986). In *Meadow*, this court applied New York law to grant summary judgment dismissing a claim of prima facie tort. The court held that it is "not expressly recognized by the state courts of the Commonwealth" and that "the Virginia Supreme Court has not recognized these various claims [including prima facie tort]." [10] As a matter of law,

10. Apparently, a prima facie tort is recognized only in New York, but under very restrictive

therefore, the court GRANTS defendants' motion for summary judgment on plaintiff's prima facie tort claim.

### C. Conversion

█ Plaintiff alleges that defendants' conduct constitutes the conversion to defendants of plaintiff's business with Newport News, the accompanying goodwill, and the profits plaintiff would have derived from that relationship. Conversion is the intentional exercise of dominion or control over another's property that so seriously interferes with the right of another to control it that the actor may justly be required to pay the full value of the property. *Restatement (Second) of Torts* § 222A (1965). Courts generally recognize the conversion of intangible rights, the claim here, only in cases in which those rights arise from, or are merged with, a document, such as a contract, promissory note, bond, etc. *Id.* § 242 (and cases cited therein).[11] Although an expansion of conversion principles to undocumented intangible rights has been sought, the courts have generally not recognized such a claim because other more appropriate remedies exist:

> The process of expansion has stopped with the kind of intangible rights which are customarily merged in, or identified with some document. There is perhaps no very valid and essential reason why there might not be conversion of an ordinary debt, the good will of a business, or even an idea, or "any species of personal property which is the subject of private ownership."
>
> The American economy has experienced an increasing use of intangible ideas. It has been urged that conversion should expand to redress interference with all properties—tangible or intangible. But it would seem preferable to fashion other remedies, such as unfair competition, to protect people from having intangible values used and appropriated in unfair ways.

W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 15, at 92 (5th ed. 1984).

█ Here, plaintiff's alleged rights do not constitute the requisite "property" necessary to support a conversion claim. Plaintiff asserts that the requirement of a document is satisfied by the "open contracts between USP and Newport News, which established a relationship between them providing each party with intangible rights." Plaintiff's Memorandum of Law in Opposition to Motion for Summary Judgment at 36 (Sept. 17, 1991). Yet plaintiff has not contended that defendants interfered with any existing contracts between Newport News and plaintiff. Rather, as one of many potential suppliers to Newport News, plaintiff was on an "Acceptable Suppliers List." Until a definite commitment to buy and sell was reached, neither party assumed any duty to the other. Therefore, an "Acceptable Suppliers List" did not create property rights to support plaintiff's conversion claim. Potential "future contracts" simply will not legally support a conversion claim such as plaintiff's, and the court GRANTS defendant's motion for summary judgment on this claim.

### III.

### Conclusion

Based on this opinion, the matter shall go forward for a trial by jury on plaintiff's Robinson–Patman Act and intentional interference with business relations claims. The Clerk shall enter judgment in favor of defendant on plaintiff's claims of prima facie tort and conversion. All of defendant's counterclaims are DISMISSED because they are barred by the applicable statute of limitations.

It is so ORDERED.

---

circumstances. The activities complained of must be based solely on malice toward plaintiff. If "other motives exist, such as profit, self-interest, or business advantage, *prima facie* tort does not lie." *Meadow*, 639 F.Supp. at 654. Plaintiff cannot meet this test. It has offered no evidence that either defendant acted with malice.

Instead, all of plaintiff's evidence suggests that the defendants acted for their own self-interest.

**11.** Research has disclosed no case law in Virginia, however, that recognizes the conversion of intangible rights.