**Renee M. DOUGLAS, Plaintiff,**

v.

**DABNEY S. LANCASTER COMMUNITY COLLEGE, Dr. Benjamin Terry King, Dr. Michael Scott, and Dr. Robert H. Day, Jr., Defendants.**

**No. CIV. A. 95–0352–R.**

United States District Court,
W.D. Virginia,
Roanoke Division.

July 1, 1997.

John Saul Edwards, Roanoke, VA, for plaintiff.

James S. Gilmore, III, Neil Anthony Gordon McPhie, Catherine Currin Hammond, Maureen Fay Riley Matsen, Office of Attorney General, Richmond, VA, for Dabney S. Lancaster Community College, Dr. Michael Scott, Dr. Robert H. Day, Jr.

William Fain Rutherford, Jr., Todd A. Leeson, Flippin, Densmore, Morse, Rutherford & Jessee, Roanoke, VA, for Dr. Benjamin Terry King.

*MEMORANDUM OPINION*

KISER, Senior District Judge.

Plaintiff Renee M. Douglas is a professor of criminal justice at Dabney S. Lancaster Community College ("DSLCC" or "the college"). The plaintiff has filed claims against all of the defendants alleging sexual discrimination and sexual harassment, retaliation, intentional infliction of emotional distress, state law sexual discrimination and sexual harassment, and wrongful interference with professional relations. Defendant King and Defendants DSLCC, Dr. Michael Scott, and Dr. Robert Day have filed separate motions for summary judgment.[1] The defendants assert there is no dispute of material fact and they are entitled to judgment as a matter of law on all of the plaintiff's claims.

The parties have fully briefed the issues involved and have presented oral argument. The motions are, therefore, ripe for disposition. For the reasons contained herein, I am of the opinion that the defendants' motion for summary judgment should be denied in part as to King's individual liability under Title VII and Section 1983 for hostile environment

sexual harassment and for disparate treatment under a sexual quid pro quo theory for the plaintiff's VWCC reprimand and as to DSLCC's liability under Title VII for King's hostile environment sexual harassment and disparate treatment under a sexual quid pro quo theory for the plaintiff's VWCC reprimand (Count 1 of the complaint) and granted in part as to all other claims under Count 1 and all other counts of the complaint.

## I. FACTS

The plaintiff is a member of the DSLCC faculty and head of DSLCC's Administration of Justice program. Defendant King is dean of academics and instruction at the college. Defendant Scott is chairman of the arts and sciences division at DSLCC; Scott was plaintiff's direct supervisor from November 3, 1993, to July 1, 1996. Defendant Day was chairman of the business and technology division of DSLCC until from 1992 through June 30, 1994; Day was plaintiff's direct supervisor from June 1992 until November 3, 1993. Marge Carte is the former chairman of the business and technology division of DSLCC and was plaintiff's direct supervisor from 1988 until 1992. Dr. John F. Backels was the president of DSLCC until 1995; Dr. Richard Teaff assumed the presidency of DSLCC in 1995.

The relevant events surrounding the plaintiff's claims in this action are in the following timeline:

*1988*

- Plaintiff was hired as assistant professor at DSLCC. Plaintiff alleges that she was hired at a lower salary than her male counterparts, despite their lower amount of field experience and lesser education.

- Plaintiff alleges that King asked inappropriate questions about whether plaintiff planned to marry and have more children and whether plaintiff was seriously dating in the job interview. King required the plaintiff to live near DSLCC.

*1989*

- Plaintiff claims that King made sexual advances to her in 1988 and spring 1989:

---

1. I will consider the two motions jointly.

King called plaintiff, asking her out on dates; King propositioned plaintiff at the college.

## 1990

● A program of study approved by President Backels was part of the Virginia Community College System ("VCCS") professorial requirements. In May 1990, Marge Carte wrote to King, recommending plaintiff's program of study for approval. Plaintiff claims that King told her he would approve it and that plaintiff would be eligible for promotion to associate professor once she met the minimum years of teaching requirement in 1993, but King never approved plaintiff's program of study. King maintains that Backels refused to sign plaintiff's program of study because it was not in her teaching field. Plaintiff claims this refusal was not conveyed to her.

● Plaintiff maintains that King made comments about a relationship between her and fellow professor Jerry Dale in 1989–91 that allude to an affair (e.g., "you and Jerry doing the wild thing too long").

## 1991

● Plaintiff asserts that, in November 1991, King made an inappropriate comment about plaintiff's "good sex" with her then-fiance Michael Banks.

## 1992

● In the spring of 1992, plaintiff claims that she spoke directly with Backels about King's harassment.

● Plaintiff claims that, in a May 1992 phone call, King asked her if she would have an affair with him. King said he could make plaintiff's life miserable, if he wanted to, and that plaintiff and her career would be dirt. Police officer Robert Carpentieri was at plaintiff's home and heard the conversation over the speaker phone.

● During 1992 summer vacation, when plaintiff was not under contract with DSLCC, plaintiff alleges that Day repeatedly called her at home and insisted that she drive 2.5 hours to DSLCC to meet him.

● Plaintiff claims that, in December 1992, when she advised Day about her need for immediate surgery, Day gave her a hard time about upcoming exams and told her she should wait until May 1993 to have the surgery done.

● In December 1992, plaintiff contends that King asked whether her surgery was something feminine and King told her, "You can't sleep with me now."

● In December 1992, Scott made the comment regarding plaintiff's upcoming surgery that, "I hear we can play tennis with your problem."

## 1993

● Plaintiff claims that, while she was in the hospital in January 1993 for major surgery, Day repeatedly called her about work. After plaintiff's husband told Day not to call and not to visit, Day visited the plaintiff.

● Plaintiff was not promoted to associate professor in the spring of 1993; plaintiff alleges that King blocked the promotion.

● Plaintiff claims she spoke with Backels about King's harassment in the spring, in September, and in November.

● Plaintiff claims that Day would not let her take time off on the day her ex-husband died (August 23, 1993).

● In the spring and fall 1993, Paul Phillips, a student in plaintiff's class, harassed plaintiff through inappropriate comments and actions. In April 1993 and on a number of occasions in the fall of 1993, plaintiff complained orally and in writing to DSLCC to take disciplinary action against Phillips. It was not until October 1993 that Dr. Goralewicz, director of student services at DSLCC, indicated that he would establish a hearing on the matter. Phillips was expelled after a hearing on October 26 and 27, 1993.

● In October 1993, plaintiff alleges that King asked her how her sexual libido was.

● In October 1993, plaintiff alleges that, in an argument regarding the hiring of another instructor, Day cursed and abused her and called her a "bitch."

- From October 27 to November 2, 1993, the plaintiff was on sick leave from DSLCC due to stress.
- On November 3, 1993, Scott replaced Day as plaintiff's direct supervisor.
- In November 1993, DSLCC received an anonymous complaint that the plaintiff was teaching classes at Virginia Western Community College ("VWCC") while on sick leave. King asked Scott to investigate the complaint.
- In early November 1993, plaintiff claims that King commented that a dress she was wearing showed off her best features, implicitly referring to her breasts and buttocks. A student, Shane Wills, overheard the conversation.
- Plaintiff alleges that, after the Phillips hearing, Scott had her students do new evaluations of her, instead of using the ones already done. Scott claimed that the original evaluations could not be found, but he found them after the personnel evaluation was completed.
- On or about November 29, 1993, plaintiff claims that Scott called her at home after she severely injured her back and advised her that she had an hour to decide if she wanted her job after the first of the year.
- In a December 21, 1993, letter, Scott refused to recommend plaintiff for reappointment to the faculty for the following term, because of his belief that plaintiff was refusing to cooperate in the VWCC investigation. King concurred in Scott's decision.
- In December 1993, plaintiff filed her EEOC claim.

*1994*

- Around January 1994, plaintiff claims that King asked her, "Is your new husband meeting your needs at home?"
- In the winter of 1994, plaintiff alleges that King told her that things must be going well at home, "because you don't want to have anything to do with me." Plaintiff believes she may have told King he was "sick."
- In a January 28, 1994, letter, Scott informed King that, because of conflicting evidence over whether plaintiff taught at

VWCC, Scott reversed his non-reappointment recommendation and, instead recommended that plaintiff be given a written reprimand for her failure to cooperate in the VWCC investigation. A letter of reprimand was subsequently placed in plaintiff's file. On April 7, 1994, the plaintiff filed a grievance regarding the reprimand.

- In a overall evaluation for 1993 written on February 7, 1994, Scott gave plaintiff only a "fair" mark. Scott cited the plaintiff's refusal to cooperate in the VWCC investigation as the reason plaintiff was not given a "good" mark. Plaintiff and Scott subsequently had a number of conversations regarding the evaluation; plaintiff later grieved the evaluation.
- The plaintiff was not promoted to associate professor because of her "fair evaluation." Plaintiff alleges that King blocked the promotion.
- On several occasions on campus in February 1994, plaintiff claims that King told her that "all of this" could have been avoided if "you had been nicer to me," and, "We could have a good time ... I could do a lot for you." Plaintiff inferred "all this" to mean her non-reappointment, non-promotion, non-multi-year contract, VWCC incident, Phillips matter, fair evaluation, and written reprimand.
- In late March or early April 1994, plaintiff states that King asked her if she wanted to go out for drinks or dinner and King suggested they could get a motel room "to have a good time." When plaintiff objected, King told her she could be more "agreeable" or she would "suffer the consequences" because he was in charge of the college. Plaintiff states that David Allen witnessed most of this conversation.
- In April 1994, the plaintiff was denied a five-year contract and was awarded a one-year contract. This decision was made by an independent faculty committee.
- Plaintiff claims that, during grievance hearings in April 1994, Scott would smirk, laugh and appear amused. Scott asked irrelevant questions about such things as how expensive plaintiff's attorney was.

- Plaintiff alleges that she spoke with Backels about King's harassment.

- Plaintiff alleges that King attempted to persuade Charles Bartocci, the program head for pulp and paper at DSLCC and plaintiff's former office mate, to get the plaintiff to drop her EEOC claim.

- Plaintiff alleges that, in the fall of 1994, King commented that he had heard plaintiff was not happy at home and told her he was "available."

*1995*

- The plaintiff claims she was not promoted to associate professor; she alleges that King blocked the promotion.

- In September, plaintiff saw Scott half naked in his office; Scott had left the door open while he changed his clothes.

*1996*

- In April 1996, the plaintiff was promoted to associate professor.

- In July 1996, Judy Coleman replaced Scott as plaintiff's direct supervisor.

In the complaint filed on December 21, 1995, the plaintiff makes the following allegations:

1. *Count 1:* The defendants discriminated against the plaintiff on account of her gender in violation of Title VII of the Civil Rights Act of 1964, *see* 42 U.S.C. § 2000e *et seq.* (1994), and the Civil Rights Act of 1871, *see* 42 U.S.C. § 1983 (1994) ("Section 1983"). The college and King engaged in sexual harassment and abusive conduct toward the plaintiff; said conduct created a hostile working environment. The defendants also discriminated against the plaintiff on account of her gender by refusing to promote her and refusing to provide equal pay.

2. *Count 2:* In violation of Title VII and Section 1983, the defendants retaliated against the plaintiff on account of her exercising her First Amendment rights in filing a charge against a student at the college and in filing an EEOC claim.

3. *Count 3:* The defendants' conduct toward the plaintiff constitutes an intentional infliction of emotional distress.

4. *Count 4:* The defendants' conduct constitutes sexual discrimination and sexual harassment in violation of the Virginia Human Rights Act, *see* Va.Code § 2.1–714.

5. *Count 5:* The defendants' conduct constitutes a tortious interference with the plaintiff's professional relations, and a conspiracy to do so.

## II. MOTION FOR SUMMARY JUDGMENT

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial and summary judgment is appropriate. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In considering a motion for summary judgment, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. The plaintiff is entitled to have the credibility of all his evidence presumed." *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.1994) (citations omitted), *cert. denied,* 513 U.S. 813, 115 S.Ct. 67, 130 L.Ed.2d 24 (1994). There is a genuine issue of fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. GENDER DISCRIMINATION (COUNT 1)

In Count 1, the plaintiff's allegations fall into two categories:

(1) *Disparate treatment discrimination—* The plaintiff claims she was subjected to discrimination in the terms, conditions, and privileges of her employment (i.e., denial of promotion in 1993, 1994, and 1995, VWCC reprimand, failure to re-

ceive a multi-year contract in 1994, lack of equal pay when hired, fair evaluation in 1994, and poor treatment in the Phillips matter),[2] because of her sex (especially the advances by King).

(2) *Hostile environment sexual harassment*—The plaintiff was required to work in a discriminatorily hostile or abusive environment.

Each of the plaintiff's claims is asserted under Title VII and Section 1983 and against all defendants. The defendants raise a number of affirmative defenses and objections to the sufficiency of the plaintiff's evidence. I will first address the affirmative defenses and then discuss the sufficiency of the plaintiff's evidence.

### 1. Affirmative defenses

#### a. Statute of limitations

##### i. *Title VII*

■ To maintain a Title VII lawsuit in Virginia, a plaintiff must file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the alleged discriminatory act. *See* 42 U.S.C. § 2000e–5(e)(1) (1994). This requirement is akin to a statute of limitations and is subject to equitable modification, such as tolling or estoppel, in appropriate circumstances. *See English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir.1987). In this case, the plaintiff's attorney mailed the plaintiff's initial EEOC charge on December 18, 1993, but the letter was returned because the address had changed. The plaintiff's attorney re-mailed the charge on December 31, 1993. Thus, the 180–day period began on July 4, 1993.

##### ii. *Section 1983*

■ The court in *Eldridge v. Bouchard*, 620 F.Supp. 678 (W.D.Va.1985), noted:

There is no federal statute of limitations applicable to suits arising under § 1983, therefore, federal courts must borrow the state statute of limitations that most close-

ly fits [the] cause of action. It is generally recognized that this federal rule establishes as the time of accrual that point in time when the plaintiff knows or has reason to know of the injury which is the basis of [her] action.

*Id.* at 682. In *Eldridge*, the court applied Virginia's two-year statute of limitations for personal injury actions, *see* Va.Code § 8.01–243 (1992), to the plaintiff's Section 1983 action alleging a salary differential was arbitrary and unconstitutional. I find this to be the appropriate limitations period for the plaintiff's Section 1983 claims. The complaint in this action was filed on December 21, 1995; thus, the plaintiff's cause of action must have arisen on or after December 21, 1993.

##### iii. *Continuing violation*

■ Under both Title VII, *see, e.g., Alvey v. Rayovac Corp.*, 922 F.Supp. 1315 (W.D.Wi.1996), and Section 1983, *see Eldridge*, 620 F.Supp. at 682–83, the statute of limitations may be tolled if the court finds the violations were of a continuing nature. To determine whether a series of allegedly related events constitutes a continuing violation as opposed to a series of isolated outbreaks, under Title VII or Section 1983, courts consider the following factors:

(i) subject matter—whether the violations constitute the same type of discrimination; (ii) frequency; and (iii) permanence—whether the nature of the violations should trigger an employee's awareness of the need to assert her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.

*Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410 (10th Cir.1993) (Title VII); *see also Houck v. City of Prairie Village*, 924 F.Supp. 120 (D.Kan.1996) (Section 1983).

■ Under plaintiff's disparate treatment claim, the events that would fall outside the limitations period for Title VII and/or Section 1983 ("the events at issue") are the

---

**2.** The plaintiff alleges in an affidavit that, unlike male counterparts who have been given release time to work on their advanced degrees, she has been given no such release time. However, the plaintiff provides no evidence in support of this allegation. Accordingly, I will grant the defendants' motion for summary judgment as to this claim.

denial of promotion in the spring of 1993 (Title VII and Section 1983), the lack of equal pay (Title VII and Section 1983) and poor treatment in the Phillips matter (under Section 1983 and under Title VII for pre-July 1993 events). Under plaintiff's hostile environment claim, the plaintiff's evidence of actions surrounding the hostile environment claim ("the actions at issue") that occurred prior to the applicable June/December tolling periods would fall outside the limitations period.

Examining the plaintiff's allegations in light of the *Martin* factors, I find the plaintiff fails to raise a triable issue of fact as to the continuing nature of the alleged violations. On the issue of frequency, I find the events and actions at issue to be isolated outbreaks rather than continuing acts. King's "inappropriate" comments averaged approximately two per year; there was almost a one-year break between King's May 1992 phone call and the spring 1993 nonpromotion decision. Plaintiff's only allegations against Day are two improper actions in 1992 and two in 1993. The first complaint plaintiff had against Scott was not until November of 1993. On the question of permanence, I find the plaintiff was aware of her injuries as they occurred, but failed to file a claim. The plaintiff admitted in her deposition that she first reached the conclusion that King's statements were inappropriate sexual harassment in 1989. The plaintiff also admitted that she spoke with her attorney about filing grievances about King's May 1992 phone call soon after it occurred, but declined to do so. The plaintiff has filed grievances on numerous other complaints soon after she was aware of her injury. On the issue of subject matter, there is no evidence the events at issue were substantially related to each other or to the events that are not time-barred. I note that the reasons the plaintiff was not promoted in 1993 (e.g., the plaintiff's program of study was not approved) are different from the reasons the plaintiff was not promoted in 1994 and 1995 (e.g., the fair evaluation). The alleged "harassment" by Day and Scott has no common theme, nor is there any evidence it is gender-specific. Considering these factors together compels me to find that no continuing violation exists. The plaintiff will be held to the applicable statutes of limitation.

Accordingly, I grant summary judgment for the defendants on the following claims, as they are barred by the statute of limitations: (1) plaintiff's claim of disparate treatment under Title VII and Section 1983 for her denial of promotion in the spring of 1993, (2) plaintiff's claim of disparate treatment for her treatment in the Phillips matter under Section 1983, (3) plaintiff's claim of disparate treatment for her lack of equal pay, and (3) plaintiff's claim of hostile environment sexual harassment prior to July 4, 1993 (under Title VII), and December 21, 1993 (under Section 1983).

### b. Section 1983 immunity

The doctrine of *respondeat superior* does not apply in Section 1983 cases; DSLCC cannot be found liable merely because it employs a tortfeasor. *See Monell v. Dep't of Soc. Services of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Vinnedge v. Gibbs,* 550 F.2d 926 (4th Cir.1977). For DSLCC to be liable under Section 1983, the plaintiff must show that the alleged disparate treatment and hostile environment was because of DSLCC custom or policy. *See Monell,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). The record is devoid of evidence that a DSLCC custom or policy was discriminatory. *Compare Monell,* 436 U.S. at 661 (stating that the complaint was that the defendants "had as a matter of official policy compelled pregnant employees to take unpaid leaves of absence before such leaves were required for medical reasons"). A suit against King, Day, and Scott in their official policies is tantamount to suing DSLCC. *See id.* at 690–94; *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). The only question remaining is whether there is sufficient evidence to raise an issue of material fact so as to enable the remaining Section 1983 claims to proceed against defendants King, Scott, and Day in their individual capacities.

I must, consequently, grant the motion for summary judgment as to all claims under Section 1983 against DSLCC, and against King, Scott, and Day in their official capacities.

c. Title VII individual liability

In *Frye v. Virginia Transformer Corp.*, No. 95–0399–R, 1995 WL 810018, at \*2 (W.D.Va. Nov.29, 1995), I held that under *Paroline v. Unisys Corp.*, 879 F.2d 100, 104 (4th Cir.1989), *vacated in part on other grounds on reh'g*, 900 F.2d 27 (1990), an employee in a supervisory position may be found individually liable under Title VII for sexual harassment that is conducted for his own benefit and not for his employer. In *Blankenship v. Warren County, Va.*, 918 F.Supp. 970 (W.D.Va.1996), *rev'd in part on other grounds on reh'g*, 931 F.Supp. 447 (W.D.Va.1996),[3] Judge Michael extended my analysis in *Frye* to hold that individual liability in a Title VII case would not be found where the allegation is based on gender discrimination (i.e., no acts of sexual harassment are alleged). *See id.* at 973. Combining these decisions, I find that individual liability under Title VII will attach to employees when all of the following conditions are met:

(1) The employee "serves in a supervisory capacity and exercises a significant degree of control over the plaintiff.... Such control takes the form of the ability to hire, fire, or establish the conditions of employment[;] ... having significant input into such decisions is sufficient." *Frye*, 1995 WL at \*2.

(2) The harassment is sexual (i.e., the plaintiff alleges a sexual quid pro quo theory of disparate treatment or a hostile environment based on sexual harassment).

(3) "[T]he sexual harassment is conducted by the supervisor for his own benefit and not for that of his employer." *Id.*

In this case, none of the allegations against Day and Smith are explicitly sexual in nature. I do find that the plaintiff has created a material question of fact as to King's individual liability for both the disparate treatment (but only on a sexual quid pro quo theory) and hostile environment claims. There is sufficient evidence that King was in a position of control over the plaintiff and that his actions were sexual in nature and designed for his own benefit (e.g., plaintiff's claim that King invited her to a motel to have a good time).

The defendants' motion for summary judgment is granted as to the individual liability of Day and Scott under Count 1 of the complaint and denied as to the individual liability of King under Count 1.

d. Preclusion of claims not in EEOC filings

The defendants allege that the plaintiff's claim should be dismissed in part, because several comments allegedly made by King that the plaintiff now relies on were not included in her multiple filings with the Equal Employment Opportunity Commission ("EEOC"). The goal of the preclusion requirement is to allow the EEOC to conduct its investigative and conciliatory role and to give the charged party notice of the charges. *See Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 127 (7th Cir.1989). To determine whether a claim has been properly set forth in the EEOC charge, a court should consider that:

... a claim omitted from the administrative complaint or charge may nonetheless be pursued in a Title VII suit if the omitted claim is reasonably related to the allegations and claims in the administrative charge or, if disclosed, the omitted claim could reasonably be expected to follow from the administrative investigation based on the deficient administrative charge.

*See Nicol v. Imagematrix, Inc.*, 767 F.Supp. 744, 753 (E.D.Va.1991). In her initial EEOC charge, the plaintiff states:

CHARGES: Sexual Discrimination, including:

1. Unequal pay due to gender.

2. Denial of promotion to associate professor due to gender

---

3. The parties cite a number of unpublished cases in their arguments on this issue. The parties fail to provide the court with copies of any of these decisions. Consequently, I will not consider them in my decision on this issue.

3. Hostile working environment and sexual harassment, including a) failure to protect against hostile working environment and sexual harassment by student after notice and complaint, b) the making of inappropriate, offensive and unwelcome remarks and c) harassment of her in her work, denying her opportunities to advance and attempting to sabotage her career.

Contrary to the defendant's assertion, I find the plaintiff's remaining disparate treatment and hostile environment claims to be reasonably related to the above allegations, and I find the EEOC charge provides sufficient information to give notice to the defendants. The EEOC charge need not spell out every bad act of the defendants in order for the charge to provide sufficient notice to the defendants. In this case, the EEOC charge alludes to the unequal pay, denial of promotion and opportunities, sexual harassment, and hostile working environment claims that the plaintiff now seeks relief on; this is sufficient information to defeat the defendants' motion on this point.

### 2. Sufficiency of the evidence

As I granted summary judgment for the defendants on a number of the plaintiff's Count 1 allegations *supra*, the following claims are all that remain to be addressed:

(1) King's individual liability under Title VII and Section 1983 for (a) disparate treatment under a sexual quid pro quo theory for the plaintiff's denial of promotion in 1994 and 1995, VWCC reprimand, failure to receive a multi-year contract in 1994, fair evaluation in 1994, and poor treatment in the Phillips matter (under Title VII only); and (b) hostile environment harassment.

(2) DSLCC's liability under Title VII for tortious acts by King and other DSLCC employees (including Scott and Day) for the following events: (a) disparate treatment for the plaintiff's denial of promotion in 1994 and 1995, VWCC reprimand, failure to receive a multi-year contract in 1994, fair evaluation in 1994, and poor treatment in the Phillips mat-

ter; and (b) hostile environment harassment.

#### a. Proof requirements

The court's analysis of the sufficiency of the evidence with regard to plaintiff's Title VII claims also governs plaintiff's claims under Section 1983. *See Holder v. City of Raleigh*, 867 F.2d 823, 828 (4th Cir.1989).

##### i. *Disparate treatment*

In *Int'l Bhd. of Teamsters v. U.S.*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), the Supreme Court stated:

> "Disparate treatment" ... is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment. Undoubtedly disparate treatment was the most obvious evil Congress had in mind when it enacted Title VII.

*Id.*

If the plaintiff produces direct evidence of discriminatory intent, there is no need to resort to the use of circumstantial evidence to prove disparate treatment. Direct evidence of intentional discrimination may take the form of statements made by decision makers that demonstrate "unlawful bias against the plaintiff with respect to the employment decision at issue." BARBARA LINDEMANN & PAUL GROSSMAN, EMPLOYMENT DISCRIMINATION LAW 40 (Bureau of National Affairs, Inc.3d ed.1996).

If the plaintiff is unable to produce direct evidence of intent, the plaintiff must resort to the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny. Under this analysis, the plaintiff must first establish a *prima facie* case of discrimination. If the plaintiff establishes her *prima facie* case and thus creates a presumption of discrimination, the burden of production shifts to the defendant to rebut the presumption by proffering a legitimate, nondiscriminatory reason for his action. *See Texas Dept. of Community Affairs v. Bur-*

*dine,* 450 U.S. 248, 253–54, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the defendant articulates such a reason, the burden of production shifts back to the plaintiff to demonstrate that the reason is a pretext for unlawful discrimination. *See id.* 450 U.S. at 256.

■ In a disparate treatment case, the plaintiff establishes her *prima facie* case by showing all of the following elements: (1) she is a member of a class protected by Title VII; (2) she was entitled to the desired benefit; (3) the defendant denied her this benefit; and (4) unprotected employees were granted this benefit. *See Keegan v. Dalton,* 899 F.Supp. 1503, 1513 (E.D.Va.1995).

■ One form of disparate treatment is sexual quid pro quo harassment: "someone has relied upon actual or apparent authority to extort sexual favors from an employee." LINDEMANN & GROSSMAN at 759. In a disparate treatment case based on a theory of sexual quid pro quo harassment, the plaintiff establishes her *prima facie* case by showing all of the following elements:

1. The employee belongs to a protected group.
2. The employee was subject to unwelcome sexual harassment.
3. The harassment complained of was based upon sex.
4. The employee's reaction to the harassment affected tangible aspects of the employee's compensation, terms, conditions, or privileges of employment. The acceptance or rejection of the harassment must be an express or implied condition to the receipt of a job benefit or cause of a tangible job detriment to create liability. Further, as in typical disparate treatment cases, the employee must prove that she was deprived of a job benefit which she was otherwise qualified to receive because of the employer's use of a prohibited criterion in making the employment decision.
5. The employer, as defined by Title VII, 42 U.S.C. § 2000e(b), knew or should

have known of the harassment and took no effective remedial action.

*Spencer v. General Elec. Co.,* 894 F.2d 651 (4th Cir.1990) (*citing Glezos v. Amalfi Ristorante Italiano, Inc.,* 651 F.Supp. 1271, 1276 (D.Md.1987)).

### ii. Hostile environment

■ As the Supreme Court held in *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), an employer can be liable for "requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).[4] The requirements for the plaintiff's *prima facie* showing in a hostile environment case are as follows:

[T]he plaintiff must show (1) that the conduct in question was unwelcome, (2) that the harassment was based on sex, (3) that the harassment was sufficiently pervasive or severe to create an abusive working environment, and (4) that some basis exists for imputing liability to the employer.

*Paroline v. Unisys Corp.,* 879 F.2d 100 (4th Cir.1989), *vacated in part on other grounds,* 900 F.2d 27 (4th Cir.1990). To determine the third element of this showing, the Supreme Court in *Forklift* clarified that an employer is liable for conduct that is "severe or pervasive enough to create an objectively hostile or abusive working environment—an environment that a reasonable person would find hostile or abusive." *Forklift,* 510 U.S. at 21. In deciding whether an environment is "hostile" or "abusive," courts must look at the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* 510 U.S. at 23. Courts may consider the effect of the discriminatory conduct on the employee's psychological well-being as a factor. *See id.* Courts may also consider whether the conduct is that of a supervisor or fellow employ-

4. The Fourth Circuit has applied the *Forklift* standard to a case in which a plaintiff alleges discrimination based on a hostile work environ-

ment under Section 1983. *See Ward v. Johns Hopkins University,* 861 F.Supp. 367, 376 n. 8 (D.Md.1994).

ee. *See Schweitzer–Reschke v. Avnet, Inc.,* 874 F.Supp. 1187 (D.Kan.1995).

Once the plaintiff meets this initial burden, the defendant may rebut the inference of hostile environment discrimination by showing that "either ... the events did not take place, ... they were isolated or genuinely trivial[,] ... [the defendant took prompt] remedial action reasonably calculated to end the harassment," or the defendant was unaware of the harassment. *Katz v. Dole,* 709 F.2d 251, 256 (4th Cir.1983).

### b. King

#### i. *Disparate treatment*

In order to defeat summary judgment, the plaintiff must provide a causal link between the alleged harassment and the adverse employment action. The plaintiff must produce sufficient evidence to create a material dispute of fact that King made or substantially influenced each of the decisions that caused her detriment. *See, e.g., Dockter v. Rudolf Wolff Futures, Inc.,* 913 F.2d 456, 461–62 (7th Cir.1990) (holding that plaintiff's termination did not result from her rejection of a supervisor's advances; noting that managers other than the harassing supervisor suggested her termination); *Highlander v. K.F.C. Nat'l Management Co.,* 805 F.2d 644, 649 (6th Cir.1986) (holding that plaintiff could not prove quid pro quo sexual harassment; noting that harassing supervisor "did not participate in the decision to terminate plaintiff's employment"). Although King, as Dean of Instruction, was one of plaintiff's supervisors, it is clear from the evidence that King was not involved in every decision concerning the plaintiff. The plaintiff offers no evidence or argument that King was involved in the Phillips matter. Although the plaintiff alleges that King was influential in the 1994 job evaluation, denial of promotion in 1994 and 1995, and multi-year contract decision, the plaintiff proffers no evidence of King's involvement in these actions. There is uncontradicted evidence that Scott made the decision to give the plaintiff a "fair" evaluation in 1994; the plaintiff has proffered no evidence that King influenced or was involved in this decision. It was DSLCC policy that an applicant for promotion must have two years of at least "very good" evaluations; in the spring of 1994, Scott determined that plaintiff did not meet this minimum requirement for promotion. There is no evidence that King was involved in this decision. The defendants deny that the plaintiff even applied for promotion in 1995; nevertheless, the plaintiff proffers no evidence that King was involved in the 1995 promotion decision. There is no evidence that King was a part of the independent committee that decided not to award the plaintiff a multi-year contract. The plaintiff cannot rest on mere speculation to defeat summary judgment. *See Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985) (noting that "wholly speculative assertions will not suffice" to defeat summary judgment). I will, accordingly, grant the defendants' motion for summary judgment as to these allegations.

The record in this case contains a memo from Scott to King in which Scott recommended the VWCC reprimand. It is, thus, appropriate to infer that King affirmed the recommendation. I am left with the decision of whether King's affirmation of the VWCC reprimand was sufficiently linked to the plaintiff's rejection of his harassment to defeat summary judgment. At the summary judgment stage, I must view the facts and draw reasonable inferences in favor of the plaintiff. I find that King's statement, "All of this could have been avoided if you had been nicer to me," can be construed as an admission that past sexual acts influenced his decision on the reprimand. The plaintiff meets her burden for summary judgment on this question.

Accordingly, the defendants' summary judgment motion is denied as to King's individual liability under Title VII and Section 1983 for disparate treatment under a sexual quid pro quo theory for the plaintiff's VWCC reprimand and granted as to King's liability for disparate treatment of the plaintiff in all other regards.

#### ii. *Hostile environment*

I find that the plaintiff has produced sufficient evidence to defeat summary judgment on this issue. The plaintiff's allegations of King's improper comments, King's

sexual propositions which were rebuffed, and King's threat to harm her career meet the elements of unwelcomeness and severity. Although King denies these events took place, the question of who to believe is in the province of a jury. King also argues these actions were isolated and trivial. However, in the January to April 1994 time frame, King made at least two alleged improper comments per month and propositioned the plaintiff at least twice.

I find that plaintiff has produced sufficient evidence to defeat summary judgment as to King's individual liability under Title VII on this issue. Quite clearly, the sexual propositions were for King's personal benefit and not that of his employer.

Accordingly, the defendants' motion for summary judgment as to King's individual liability under Title VII and Section 1983 for hostile environment sexual harassment is denied.

### c. DSLCC

#### i. *Disparate treatment*

##### (1) *King*

■ An employer is liable under Title VII for sexual quid pro quo harassment where it knew or should have known of the harassment and failed to make a timely response to it. DSLCC argues it should not be held liable for King's actions because the plaintiff failed to provide it with sufficient notice of King's harassment in a way that would have allowed prompt investigation and resolution of the issue.[5] DSLCC claims that the plaintiff never provided specific information about Dr. King's behavior to anyone, and that plaintiff never filed or pursued a complaint of sexual harassment regarding King's actions. DSLCC has submitted affidavits by Backels and VCCS Chancellor Oliver; both Backels and Oliver deny that the plaintiff ever discussed specific facts about sexual harassment with them. In response, the plaintiff claims she spoke directly with Backels about King's harassment.

I find that the plaintiff has presented sufficient evidence to defeat summary judgment on this issue. The question of whether the plaintiff discussed King's harassment with Backels is clearly one for a jury to resolve. Moreover, I find a jury question exists as to whether DSLCC had sufficient constructive notice of the harassment by the mere fact that King, DSLCC's second in command, is the alleged harasser. *See, e.g., Delgado v. Lehman,* 665 F.Supp. 460 (E.D.Va.1987) (" 'When the employer's supervisory personnel acquiesced and participated in such harassment, the burden on an employer seeking to avoid Title VII liability is especially heavy.' ") (*quoting Katz v. Dole,* 709 F.2d 251 (4th Cir.1983)).

#### (2) Other employees

The question remains whether DSLCC is liable for the acts of its other employees that relate to the plaintiff's denial of promotion in 1994 and 1995, VWCC reprimand, failure to receive a multi-year contract in 1994, fair evaluation in 1994, and poor treatment in the Phillips matter. First, the plaintiff offers no evidence suggesting that anyone other than King sexually harassed her in a quid pro quo manner. Absent a quid pro quo theory of disparate treatment, the plaintiff must satisfy the elements set forth in *Keegan v. Dalton,* see discussion *supra.* The plaintiff has proffered no evidence suggesting that unprotected employees were granted the benefits she was denied in a manner suggesting discrimination. Accordingly, the defendants' motion for summary judgment as to DSLCC's liability for disparate treatment is granted.

#### ii. *Hostile environment*

##### (1) *King*

As noted above, there is a jury issue as to whether DSLCC had notice of King's harassment. Accordingly, the defendants' motion for summary judgment as to DSLCC's Title VII liability for King's hostile environment harassment is denied.

##### (2) *Other employees*

■ Although I have held defendants Scott and Day to be immune from personal

---

5. DSLCC does not claim that the mere existence of its sexual harassment policy should shield it from liability, so I will not address that issue.

liability under Title VII, I must still address whether DSLCC can be liable under a negligence theory for the actions of Scott,. Day, and other employees in creating a hostile environment. The plaintiff's allegations of hostile environment harassment during the period at issue include: (1) Day cursed her and called her a "bitch", (2) the college delayed in addressing the Phillips matter, (3) Scott told plaintiff she had an hour to decide if she wanted her job, (4) Scott smirked and laughed during grievance hearings involving the plaintiff, (5) the VWCC investigation, (6) plaintiff's subsequent "fair" evaluation and resulting nonpromotion, and (7) plaintiff saw Scott half naked (changing his clothes) in his office.

I find the plaintiff is unable to meet her *prima facie* case on this issue, because she is unable to create a material question of fact that this harassment was based on sex. There is nothing overtly sexual about the events, nor is there any evidence that these events took place because the plaintiff was a woman. *Cf. Troutt v. Charcoal Steak House, Inc.*, 835 F.Supp. 899 (W.D.Va.1993) (hostile work environment involved sexually suggestive remarks and offensive touching). I must grant the defendants' motion for summary judgment on this issue.

In summary, I deny the defendants' motion for summary judgment as to King's individual liability under Title VII and Section 1983 for disparate treatment under a sexual quid pro quo theory for the plaintiff's VWCC reprimand and hostile environment harassment and DSLCC's liability under Title VII as King's employer for King's disparate treatment under a sexual quid pro quo theory for the plaintiff's VWCC reprimand and for King's actions in creating a hostile environment. The defendants' motion for summary judgment on Count 1 is granted in all other respects.

## C. RETALIATION (COUNT 2)

In Count 2, the plaintiff claims that, in violation of Title VII and Section 1983, the defendants retaliated against her on account of her exercising her First Amendment rights in filing a charge against Phillips and in filing an EEOC charge.

### a. First Amendment claim

■ As an initial matter, the plaintiff offers no argument and points to no evidence in support of her allegation that the defendants retaliated against her for exercising her First Amendment rights in filing a charge against Phillips. Moreover, I find that the plaintiff's charges against the student for his acts of harassment were a matter of personal concern and thus not protected by the First Amendment. *See Williams v. Morris*, 956 F.Supp. 679, 683–85 (W.D.Va. 1996). I find the defendants' motion on this issue to be well-taken and grant the motion.

### b. EEOC Charge

In the complaint, the plaintiff alleges the following events were in retaliation for filing the EEOC charge in December 1993:(a) her receipt of a reprimand for the VWCC investigation in February 1994, and (b) failure to be appointed to a new faculty position at VWCC, (c) denial of promotion, and (d) denial of a multi-year appointment.

■ In *Ross v. Communications Satellite Corp.*, 759 F.2d 355 (4th Cir.1985), the Fourth Circuit found that the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny applies to Title VII retaliation cases.[6] *See Ross*, 759 F.2d at 365. The plaintiff must first establish a *prima facie* case of retaliation by showing all of the following elements: (1) she engaged in protected activity; (2) the employer took adverse employment action against her; and (3) "a causal connection exists between the protected activity and the adverse action." *Id.* If the plaintiff establishes her *prima facie* case, the burden of production shifts to the defendant to rebut the presumption of retaliation by proffering a legitimate, nondiscriminatory reason for his action. *See id.* If the defendant articulates such a reason, the burden of production

---

6. This analysis also applies to Section 1983 retaliation claims. *See Holder v. City of Raleigh*, 867 F.2d 823, 828 (4th Cir.1989).

shifts back to the plaintiff to demonstrate that the reason is a pretext for unlawful discrimination. *See id.* In *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), the Supreme Court held that an employer can escape liability if it can prove that "even if it had not taken gender into account, it would have come to the same decision regarding a particular person." *Id.* 490 U.S. at 242.

In this case, the defendants have proffered legitimate nondiscriminatory reasons for their actions:

### a. VWCC reprimand

■ ▪The defendants offer unrebutted evidence that, in early November 1993, they received word of a complaint from the Virginia Employee Fraud, Waste and Abuse Hotline regarding plaintiff's alleged teaching at VWCC during the time she was on sick leave from DSLCC. It is unrebutted that King asked Scott to investigate the matter on November 8, 1993, and that Scott met with VWCC officials on November 19, 1993, regarding the incident. In a memorandum dated December 3, 1993, the Virginia Internal Auditor requested that the complaint be investigated. In letters to plaintiff's counsel on December 10, 1993, and December 21, 1993, Scott outlined the results of his investigation and his concerns that plaintiff was not forthcoming with an adequate response to the complaint. In the December 21 letter, Scott indicated that plaintiff's conduct could constitute an offense under the Virginia Department of Personnel policy manual. The plaintiff's EEOC charge was mailed on December 31, 1993; thus DSLCC officials received no notice of the complaint until early January 1994. In Scott's January 28, 1994, letter to King regarding the VWCC incident, Scott indicated that the basis for his recommendation of a reprimand was plaintiff's alleged unreasonable refusal to clearly and unequivocally respond to his inquiries regarding the VWCC incident.

The plaintiff points to no evidence in support of her retaliation claim other than the fact that the VWCC reprimand was placed in her file after her EEOC charge was lodged. The plaintiff points to no evidence suggesting that her lack of cooperation was a mere pretext for the reprimand or that, absent her filing of the EEOC charge, the defendants would have come to a different conclusion. As discussed above, it could be inferred that King's statement "All this could have been avoided if you had been nicer to me" may have led him to consider the rebuffed sexual overtures in affirming Scott's decision to issue a reprimand. However, it does not automatically follow that King considered the EEOC charge in the reprimand decision. Moreover, the events that formed the basis of Scott's belief that plaintiff should receive a reprimand occurred before the defendants received notice of the EEOC charge. I conclude that the plaintiff fails to produce sufficient evidence to defeat summary judgment on this issue. *See, e.g., Wrenn v. Ledbetter,* 697 F.Supp. 483 (N.D.Ga.1988) (granting summary judgment where the only evidence of causal link was the chronology of the events).

### b. VWCC appointment

The defendants have offered uncontradicted evidence that the plaintiff was not offered a position at VWCC in 1994, because VWCC was unable to fill any new positions due to a budget shortfall. The plaintiff fails to offer argument or submit evidence suggesting otherwise.

### c. Denial of promotion

The defendants offer uncontradicted evidence that Scott based his 1993 job performance evaluation on plaintiff's activities during 1993, before she filed the EEOC complaint. Moreover, plaintiff's job evaluation for her 1994 work rose to "very good." The defendants point to DSLCC policy which states that the plaintiff's "fair" evaluation from Scott for her 1993 work resulted in her denial of promotion in 1994 and 1995. As noted *supra,* the plaintiff has failed to demonstrate that King was involved in the promotion decisions and failed to show that Scott's conduct was in any way violative of Title VII or in retaliation for the plaintiff's EEOC charge. As the plaintiff offers no evidence other than the timing of the two events, I am compelled to grant summary judgment for the defendants on this issue.

### d. Denial of multi-year appointment

The defendants offer unrebutted evidence that an independent faculty committee decided to recommend plaintiff for a one-year contract as a result of the decline in plaintiff's performance to "fair" in 1993. The plaintiff offers no more than speculation in support of her claim that the committee was influenced by her filing of the EEOC charge. The plaintiff was awarded a five-year contract in 1995.

In summary, the defendants' motion for summary judgment as to Count 2 of the complaint is granted.

### D. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (COUNT 3)

In Count 3 of the complaint, the plaintiff alleges that the defendants' conduct constitutes an intentional infliction of emotional distress.

### 1. Eleventh Amendment immunity

 DSLCC maintains that it is immune from prosecution under this claim because it is an "arm" of the Commonwealth of Virginia and thus entitled to Eleventh Amendment protection. The plaintiff offers no argument and points to no evidence suggesting the contrary. DSLCC's motion is thus well-taken.

### 2. Statute of limitations

 In *Welch v. Kennedy Piggly Wiggly Stores, Inc.*, 63 B.R. 888, 898 (W.D.Va.1986), the court held that a cause of action for emotional distress is governed by the two-year statute of limitations for personal injury actions, *see* Va.Code § 8.01–243 (1992). The complaint in this action was filed on December 21, 1995; thus, the plaintiff's cause of action must have arisen on or after December 21, 1993.

Plaintiff's allegations of wrongdoing by Day occur during 1992 and 1993. Day was removed as plaintiff's supervisor in November 1993. The plaintiff makes no allegations that Day harassed her within the limitations period. Consequently, I must grant Day's motion for summary judgment on this issue.

### 3. Sufficiency of the evidence

 Defendants King, Scott, and Day claim that the plaintiff has failed to demonstrate that their conduct rose to the level of outrageousness required to maintain a cause of action for intentional infliction of emotional distress. In order to maintain an action for intentional infliction of emotional distress in Virginia, the plaintiff must show all of the following: (1) the defendant's conduct was "intentional or reckless," (2) "the conduct was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality," (3) "there was a causal connection between the wrongdoer's conduct and the emotional distress," and (4) "the emotional distress was severe." *Womack v. Eldridge*, 215 Va. 338, 210 S.E.2d 145, 148 (1974). "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, ... Where reasonable men may differ, it is for the jury, subject to the control of the court to determine [this issue.]" *Id.*; *see also Ruth v. Fletcher*, 237 Va. 366, 377 S.E.2d 412, 416 (1989) (noting that intentional infliction of emotional distress claims are to be "tightly controlled by the courts."). "Liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppression or other trivialities." *Levine v. McLeskey*, 881 F.Supp. 1030, 1054 (E.D.Va. 1995) (*quoting Owens v. Ashland Oil, Inc.*, 708 F.Supp. 757 (W.D.Va.1989)).

 It is apparent that Scott's actions do not rise to the level of outrageousness required to satisfy a claim of intentional infliction of emotional distress. His conduct during the limitations period (e.g., the VWCC reprimand, the fair evaluation, smirking and laughing at plaintiff's grievance hearing, the changing incident) at most could be considered an insult or indignity to the plaintiff.

 I find that King's actions, while sufficient to state a claim under Title VII for hostile environment harassment, do not rise to the level required to maintain an action for intentional infliction of emotional distress. In *Beardsley v. Isom*, 828 F.Supp. 397 (E.D.Va.1993), the court considered a sexual harassment claim in which the defendant al-

legedly retaliated against the plaintiff by taking "steps to undermine her ability to supervise her [police squad.]" *Id.* at 398. The court denied the defendants' motion for summary judgment with respect to the plaintiff's sexual harassment claims but found that, even when viewed in the light most favorable to the plaintiff, the claim of gender-based retaliation did not rise to the level of intentional infliction of emotional distress. *See id.* at 401. I find the allegations in this case to be at most comparable with those in *Beardsley.*

The defendants' motion for summary judgment with respect to Count 3 of the complaint is granted.

### E. State Law Sexual Discrimination and Sexual Harassment (Count 4)

■ A sexual harassment claim in a non-discharge setting has not been recognized under the *Bowman–Lockhart* public policy exception to the employment-at-will doctrine under Virginia law. *See Hott v. VDO Yazaki Corp.,* 922 F.Supp. 1114, 1128–29 (W.D.Va. 1996); *Bowman v. State Bank of Keysville,* 229 Va. 534, 331 S.E.2d 797 (1985); *Lockhart v. Commonwealth Educ. Sys. Corp.,* 247 Va. 98, 439 S.E.2d 328, 331 (1994). The plaintiff argues that, since the Virginia Supreme Court recently allowed a claim of wrongful discharge for sexual discrimination based on pregnancy to go forward, *see Bailey v. Scott Gallaher, Inc.,* No. 95–8–421 (Jan. 10, 1997), the Virginia Supreme Court intends that the *Bowman–Lockhart* exception be expanded to cover sexual harassment, as it is a subspecies of sexual discrimination. However, to expand the *Bowman–Lockhart* exception beyond its present parameters would clearly be contrary to the intent of the Virginia General Assembly. The 1995 amendments to the Virginia Human Rights Act, Va.Code § 2.1–714 *et seq.* (1995 and 1996 Supp.), sought to narrow, not expand, the *Bowman–Lockhart* exception. *See Perry v. American Home Prod. Corp.,* No. 3:96CV595, 1997 WL 109658 at *6 n. 4 (E.D.Va. Mar.4, 1997). Accordingly, the

defendants' motion for summary judgment as to this claim is granted.

### F. Tortious Interference With Professional Relations (Count 5)

In Count 5 of the complaint, the plaintiff alleges that the defendants' conduct constitutes a tortious interference with her professional relations, and a conspiracy to do so. The plaintiff seeks damages for (1) her denial of appointment to VWCC, (2) her denials of promotion, and (3) her failure to receive a multi-year appointment in 1994.

■ In order to maintain an action for interference with professional relations or a "business expectancy" [7] under Virginia Law, the plaintiff must prove:

(1) the existence of a business relationship or expectancy, with a probability of future economic benefit to plaintiff; (2) defendant's knowledge of the relationship or expectancy; (3) a reasonable certainty that absent defendant's intentional misconduct, plaintiff would have continued the relationship or realized the expectancy; and (4) damage to plaintiff.

*Smithfield Ham and Products Co. v. Portion Pac. Inc.,* 905 F.Supp. 346, 349 (E.D.Va.1995) *(quoting Levine v. McLeskey,* 881 F.Supp. 1030, 1057 (E.D.Va.1995)).

#### 1. Eleventh Amendment immunity

DSLCC maintains that it is also immune from prosecution under this claim because it is an "arm" of the Commonwealth of Virginia and thus entitled to Eleventh Amendment protection. The plaintiff offers no argument and points to no evidence suggesting the contrary. DSLCC's motion is thus well-taken.

#### 2. Applicability of cause of action in employment setting

■ Cases involving allegations of interference with a business expectancy traditionally involve interference by a third-party business or individual with a deal or relationship between two other businesses or individuals. I find no case in Virginia in which an employee has maintained an action for inter-

---

7. I find this is most analogous to the plaintiff's general allegation of "interference with profes-

sional relations."

ference with a business expectancy against her employer and supervisors that involves decisions within the employment relationship. Intra-corporate immunity should apply in this situation. Other courts have held that the interfering party must be one that is outside the relationship and that suits for interference with a business expectancy are inappropriate against employers. *See, e.g., Precision Piping and Instruments, Inc. v. E.I. du Pont de Nemours and Co.,* 951 F.2d 613 (4th Cir.1991) (holding that, under West Virginia law, the plaintiff must show intentional interference by a party outside the business relationship); *Frishberg v. Esprit de Corp., Inc.,* 778 F.Supp. 793 (S.D.N.Y. 1991) (holding that, under New York law, employees cannot state a claim against their employers for tortious interference with business relations since business relations belong to employers and not employees). Although the plaintiff brings a common law action for tortious interference, it should be noted that similar suits brought under Va.Code § 18.2–499 and 18.2–500 (1996) for conspiracy to injure another in their trade, business, or profession are not allowed for claims of injuries to one's employment interests. *See Jordan v. Hudson,* 690 F.Supp. 502, 507 (E.D.Va.1988), *aff'd,* 879 F.2d 98 (4th Cir. 1989) (dismissing for failure to state a claim for relief under Va.Code § 18.2–499 the plaintiff's allegation that co-workers conspired to injure him in his reputation, trade, business and profession as a U.S. postmaster and he was thus demoted); *see also Moore v. Allied Chem. Corp.,* 480 F.Supp. 364, 373–74 (E.D.Va.1979) (individuals who own and operate a business are protected under the statute). A decision by an employer and supervisors involving an employee's work is not the type of "interference" made actionable under this tort. A number of remedies, such as the other causes of action pled by the plaintiff, exist that protect against wrongdoing in the employment relationship. Accordingly, I hold that, under Virginia law, an employee cannot maintain an action for interference with a business expectancy against an employer or supervisors that involves decisions within the employment relationship. The plaintiff's claims for damages for her denials of promotion and failure to receive a multi-year appointment thus fail. I will not strike the plaintiff's claim for interference with the VWCC relationship under this ruling; in this case, the plaintiff and VWCC were the bargaining parties and DSLCC and its employees were the alleged third-party interferers.

### 3. Denial of VWCC appointment

I am compelled to grant the defendants' motion for summary judgment as to the VWCC appointment on the merits. The plaintiff is unable to prove the existence of a legitimate business expectancy with VWCC; it is unrebutted that VWCC was unable to fill any new faculty positions due to its budget shortfall.

The defendants' motion for summary judgment is, accordingly, granted as to Count 5 of the complaint.

## III. CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is denied in part as to King's individual liability under Title VII and Section 1983 for hostile environment sexual harassment and for disparate treatment under a sexual quid pro quo theory for the plaintiff's VWCC reprimand and as to DSLCC's liability under Title VII for King's hostile environment sexual harassment and disparate treatment under a sexual quid pro quo theory for the plaintiff's VWCC reprimand (Count 1 of the complaint) and granted in part as to all other claims under Count 1 and all other counts of the complaint.

An appropriate order shall issue.